QUAZITE DIVISION OF MORRISON
MOLDED FIBERGLASS CO.,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 95–1215.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 7, 1996.

Decided June 28, 1996.

Alexander M. Irvin, Atlanta, GA, argued the cause and filed the briefs, for petitioner.

David A. Fleischer, Senior Attorney, National Labor Relations Board, Washington, DC, argued the cause for respondent, with whom Linda R. Sher, Associate General Counsel, and Aileen A. Armstrong, Deputy Associate General Counsel, were on the brief. Paul J. Spielberg, Deputy Assistant General Counsel, entered an appearance.

Before: EDWARDS, Chief Judge, SILBERMAN and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

The National Labor Relations Board held that Quazite committed various unfair labor practices, in violation of §§ 8(a)(1) and 8(a)(5) of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 158(a)(1) and (5), which had not been remedied when the Company withdrew recognition from the Oil, Chemical and Atomic Workers International Union. As part of the remedy, the Board ordered the Company to bargain with the Union for one year. 315

N.L.R.B. 1068, 1994 WL 711432 (1994). Quazite objects to the Board's holding that it violated the Act, to the Board's choice of a remedy, and to the Board's failure to give a reasoned explanation for that choice.

We deny Quazite's petition for review of the underlying unfair labor practice charges substantially for the reasons given by the Board. With respect to the allegation that Quazite unlawfully withdrew recognition from the Union, however, we remand this matter for the Board to substantiate its claim that Quazite's unfair labor practices had a meaningful impact upon employee support for the Union. If the Board can establish that link, then it may impose the 12-month bargaining order; Quazite waived its objections to the terms of that order when it failed to raise them before the Board.

## I. Background

Quazite, a division of Morrison Molded Fiberglass Company, manufactures polymer concrete products used in roads, drain lines, and other industrial applications. The Company's production process consists of casting (pouring a concrete-like substance into a mold and removing it when dry), grinding the excess from the molded product, and assembling the products for shipping (final inspection, repair of minor defects, and packing). Local 3–987 of the Union represented production and maintenance workers at Quazite's Tennessee plant under a collective bargaining agreement (CBA) that it first negotiated with the Company in 1989. A renewal agreement was in effect from June 1990 through December 1991.

Negotiations for a second renewal of the CBA began in November 1991 and ended four months later without an agreement having been reached. In June 1992 the Union called a strike, which lasted more than two months, after which roughly half of the striking employees returned to work. A majority of the post-strike workforce then indicated in writing that they no longer wanted to be represented by the Union. Accordingly, in August 1992 Quazite notified the Union that it was withdrawing recognition. Meanwhile, the Union had filed unfair labor practice

charges against Quazite relating to the period from July 1991 through June 1992, which were then pending before the Board; the Union argued before the Board that the unfair labor practices contributed to its loss of support, making the Company's withdrawal of recognition itself an unfair labor practice in violation of § 8(a)(5) of the NLRA.

The Board, adopting the decision of its Administrative Law Judge, determined that the evidence did not support the allegation that Quazite had bargained in bad faith, but that the Company had indeed committed other unfair labor practices in violation of §§ 8(a)(1) and 8(a)(5), and that its withdrawal of recognition also, therefore, violated § 8(a)(5). Quazite objects to the Board's facts, to its (lack of) reasoning for the conclusion that unremedied unfair labor practices contributed to the Union's loss of support, and to its remedy, which requires the Company to recognize and bargain with the Union for one year. In this last regard, the Company urges us to reject the 12–month bargaining order because it unnecessarily deprives Quazite's employees of their right under § 7 of the NLRA to remove the Union as their bargaining representative.

## II.  Analysis

■■■ Section 8(a)(1) of the NLRA provides in pertinent part that an employer may not "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" under the Act. Section 8(a)(5) makes it an unfair labor practice for an employer to "refuse to bargain collectively with the representative of his employees." The Board's finding that an employer violated these provisions is conclusive if supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951). Moreover, "[t]he Court must uphold Board-approved credibility determinations of an ALJ unless they are hopelessly incredible or self-contradictory." *Elastic Stop Nut Div. of Harvard Indus. v. NLRB*, 921 F.2d 1275, 1281 (D.C.Cir.1990).

■■■ We address below Quazite's objections to the Board's determination that the Company unlawfully withdrew recognition from the Union, and to the Board's remedial order. We have examined Quazite's objections to each of the Board's other charges against the Company and we do not find them to be persuasive; indeed, none warrants treatment in a published opinion. Because the Board's decision that the employer had violated §§ 8(a)(1) and (5) before it withdrew recognition from the Union is supported by substantial evidence on the record as a whole, we deny Quazite's petition for review of those charges.

### A.  Withdrawal of Recognition from the Union

■■■ During an initial 12–month period from the date that a union is certified as a collective bargaining representative, it is conclusively presumed to enjoy the support of a majority of the employees in the collective bargaining unit. *NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 778, 110 S.Ct. 1542, 1544–45, 108 L.Ed.2d 801 (1990). Thereafter an employer may lawfully withdraw its recognition from the Union if it has a good-faith doubt, objectively founded, that the union continues to command majority support, *id.*, unless the employer's own unfair labor practices may account for the employees' diminished allegiance to the union, *Sullivan Indus. v. NLRB*, 957 F.2d 890, 897 (D.C.Cir.1992).

■■■ In this case the Board determined that a majority of the employees in the bargaining unit no longer wanted to be represented by the Union; the Board also determined, however, that the cumulative effect of the employer's unremedied unfair labor practices contributed to the Union's loss of support. More specifically, when the strike against Quazite ended in August 1992 there were 68 employees in the bargaining unit, including 31 strikers of whom only 16 returned to work. Thirty-seven of the 53 employees actually working then signed cards stating that they no longer wanted to be represented by the Union. The Board held, however, that Quazite's unfair labor practices had undermined the Union by conveying to the employees the impression that the Union was powerless and by obstructing the Union's enforcement of the CBA.

The Board maintains that Quazite's unfair labor practices need have influenced only four of the 37 employees who signed anti-Union cards; had that number not done so the Union would have retained majority support (by a margin of 35 to 33). Quazite argues that, because 15 of the strikers never returned to work, the bargaining unit comprised 53 employees, not 68, wherefore it would need to have influenced 11 employees to sign anti-Union cards in order to have turned a majority against the Union. The Board responds by suggesting also that some or all of the 15 strikers who decided not to return to work may have done so in part because of Quazite's unfair labor practices and its ongoing anti-Union activities.

The Board identified several unlawful Company practices that it believes may have given employees the impression that the Union was ineffective and powerless: dealing directly with employees on grievance matters; failing to notify the Union before discontinuing incentive pay for assemblers who performed grinding tasks; and refusing to furnish the Union with attendance records. Further, the Company offered benefits to several employees if they agreed to resign from the Union. Quazite counters that most of the alleged incidents had occurred a year or more before the employees rejected the Union. The Board also found, however, that the Company harassed striking employees only a few weeks before they signed the anti-Union cards. In addition, the Board suggested that the Company's unfair labor practices, individually and cumulatively, may have contributed to the failure of the 1992 contract negotiations, which may in turn have dampened employee enthusiasm for the Union.

Quazite, reminding us that the Board held that there was nothing unlawful about the Company's 1992 bargaining, posits some quite different reasons for the employees' disaffection. The mid–1992 strike was the Union's third in three years; like the two earlier strikes, it involved acts of violence against non-striking employees, including damage to their homes and automobiles, and threatening letters. In fact, all but four of the 37 cards disavowing the Union were signed within a few days of the reported firebombing of an automobile owned by a non-striker—and that was the second such report.

Whether the Board considered Quazite's alternative explanation for the Union's loss of support is not clear on the present record. By adopting the ALJ's decision—which is silent on the question—the Board simply concluded, without explanation or evidence, that the Company's unfair labor practices "contributed significantly to the loss of support for the Union among the employees." 315 N.L.R.B. at 1080. Because the Board made no findings linking any particular unfair labor practice with the vote of any employee, Quazite argues that the Board is making an employer's withdrawal of recognition into a *per se* violation of § 8(a)(5) whenever there is an unfair labor practice charge outstanding. Without necessarily adopting that characterization of the Board's decision, we do agree with the employer that the Board has disregarded its responsibility to give a reasoned explanation for its action.

We have consistently held that the Board must adduce substantial evidence to support its finding that an employer's unfair labor practices tended to undermine a union's majority support. *See Avecor Inc. v. NLRB*, 931 F.2d 924, 934 (1991). Applying that principle in *Williams Enters. Inc. v. NLRB*, 956 F.2d 1226 (1992), we advised the Board that in assessing the effect of an unfair labor practice upon a petition stating that employees did not want to be represented by a union, it "could have considered any improper conduct . . . providing that it adequately explained the basis for a finding that the conduct tainted the petition." *Id.* at 1236. The Board itself, in *Master Slack Corp.*, 271 N.L.R.B. 78, 84, 1984 WL 36573 (1984), had earlier identified four factors that it would consider in determining whether an unfair labor practice had a "meaningful impact" upon employees' adherence to the union. In *Williams* we endorsed the Board's formulation of the relevant factors, namely:

(1) The length of time between the unfair labor practices and the employee petition; (2) the nature of the unfair labor practices, including whether they are of a nature that would cause a lasting or detrimental effect

on the employees; (3) the tendency of the unfair labor practices to cause employee disaffection with the union; and (4) the effect of the unlawful conduct on the employees' morale, organizational activities, and membership in the union.

956 F.2d at 1236. We have no indication in this case, however, that the Board applied these factors or for that matter any factors. Indeed, apart from the conclusory statement that the employer's unfair labor practices "were the type of violations that tend to undermine the Union's status in the employees' eyes ... and did so," the Board provided no explanation for its key finding that "the withdrawal of recognition occurred in an atmosphere and context poisoned by Respondent's commission of unfair labor practices which had the effect of contributing significantly to the Union's loss of majority among the bargaining unit employees." 315 N.L.R.B. at 1080.

Lacking both substantial evidence and a reasoned explanation of any causal link between Quazite's practices and the Union's loss of support, the Board's decision that the employer's unfair labor practices caused the Union's loss of support cannot be sustained. Consequently, we remand this matter for the Board to document its determination that the unremedied unfair labor practices in this case "individually and cumulatively were the type of violations that tend to undermine the Union's status in the employees' eyes ... and did so." 315 N.L.R.B. at 1080. In substantiating its conclusion, the Board must either apply its own four-part test of *Master Slack,* or alternatively give a reasoned explanation for changing that test or for departing from it in this case.

### B. Propriety of the Board's Bargaining Order

■ The Board ordered Quazite to bargain with the Union for a period of one year as a remedy for the Company's unlawful withdrawal of recognition. Quazite contends, first, that the Board's rationale for its remedy was inadequate and, second, that the bargaining order, by barring the Union's ouster for an entire year, deprived employees of their § 7 right "to bargain collectively through representatives of their own choosing [or] ... to refrain from ... such activit[y]." 29 U.S.C. § 157. According to the Company, that right would not have been compromised if the Board had stuck to what the Company says is the Board's usual remedy in such cases, *viz.,* an order directing the employer to resume bargaining in an environment free of unfair labor practices.

Whatever the merits of its argument, Quazite did not raise this objection below and cannot, therefore, properly raise it now. *See* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board ... shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances"). Quazite argued generally before the Board that the Company did not violate the NLRA. Quazite did not make its fallback arguments that the Board did not adequately explain the need for a bargaining order in view of the minor nature of any unfair labor practice(s) that the Company might have committed, and that the Board's requirement that bargaining proceed for one year unnecessarily infringed upon the employees' § 7 rights. The Company advanced both of those arguments for the first time before this court but it has suggested no extraordinary circumstance to excuse its failure to preserve them.

Quazite's only rejoinder is that it excepted to the remedial order "in its entirety." That exception is far too broad to preserve a particular issue for appeal. By objecting to the order in its entirety, Quazite was merely reasserting that it did not violate the Act and therefore, that no remedial order at all is necessary or proper. A categorical denial does not place the Board on notice that its particular choice of remedy is under attack, much less that its failure to explain that choice is also the subject of a challenge. *See Local 900, Int'l Union of Elec., Radio and Mach. Workers v. NLRB,* 727 F.2d 1184, 1191 (D.C.Cir.1984) ("notice function ... ensures that the Board has the opportunity to resolve all issues properly within its jurisdiction"). To hold otherwise would be to set the Board up for one ambush after another.

**498**

We therefore hold that Quazite waived any objection it might now raise to the suitability of the Board's remedy by not raising it before the Board. Consequently, we have no basis upon which to question whether the Board lawfully imposed the durational feature of the 12–month bargaining order.

### III. Conclusion

We deny Quazite's petition for review in part. First, the Board's findings that the Company had violated §§ 8(a)(1) and (5) of the NLRA before it withdrew recognition from the Union are supported by substantial evidence based upon the record as a whole; they rest in large part upon credibility determinations made in the first instance by the ALJ, to which we ordinarily defer when, as here, they have been adopted by the Board. Second, because Quazite did not dispute before the Board either the Board's choice of remedy or its failure to explain that choice, the Company waived those objections and we do not consider them on the merits.

This case is remanded to the Board for a full explanation and substantiation of its conclusion that unremedied unfair labor practices undermined employee support for the Union to such an extent that it was unlawful for the Company to withdraw recognition from the Union. Accordingly, the Board's cross-application for enforcement of the bargaining order is denied without prejudice to its renewal after the completion on remand of further proceedings consistent with this opinion.

*So ordered.*