# United States Court of Appeals
## For the First Circuit

No. 05-1061

NATIONAL LABOR RELATIONS BOARD,
Petitioner,

and

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE &
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,
Intervenor,

v.

SAINT-GOBAIN ABRASIVES, INC.,
Respondent.

PETITION FOR ENFORCEMENT OF AN ORDER OF
THE NATIONAL LABOR RELATIONS BOARD

Before
Boudin, Chief Judge,
Selya, Circuit Judge,
and Schwarzer,* Senior District Judge.

Robert J. Englehart, Supervisory Attorney, Arthur F. Rosenfeld, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Kellie J. Isbell, Attorney, on brief for petitioner.

Akin Gump Strauss Hauer & Feld, LLP, Lawrence D. Levien, and Joshua B. Waxman on brief for respondent.

October 19, 2005

*Of the Northern District of California, sitting by designation.

**SELYA**, **Circuit Judge**.  The National Labor Relations Board (the Board) found that Saint-Gobain Abrasives, Inc. (Saint-Gobain) violated sections 8(a)(1) and (5) of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 158(a)(1) and (5), when Saint-Gobain unilaterally reduced the work hours of a particular cadre of employees within a collective bargaining unit.  The Board now applies for judicial enforcement of its order.  Saint-Gobain challenges the validity of the remedy selected by the Board and opposes enforcement on that basis.  We conclude that we are without jurisdiction to entertain the challenges pressed by Saint-Gobain and, consequently, enforce the Board's order.

Saint-Gobain, a multinational corporation, is the largest abrasives manufacturer in the world.  It maintains a 138-acre manufacturing complex in Worcester, Massachusetts, where it produces abrasives and ceramics.

We focus the lens of our inquiry on Plant No. 8 at the Worcester facility and, more particularly, on the employees in the "mix-and-mold" department.  These men and women, over 100 strong, work Monday through Friday, in three shifts.  Their jobs involve combining raw materials to form a mixture and then molding the mixture into grinding wheels.

For many years, mix-and-mold employees worked 7.5-hour days (with a half hour unpaid lunch break).  In September of 2000, however, Saint-Gobain instituted a new production regimen that

required overlapping shifts. To facilitate this change, it placed mix-and-mold employees on 8-hour shifts (again with a half hour unpaid lunch break).

Saint-Gobain's business is cyclical. Typically, fewer work-hours are needed in the winter months. On February 2, 2001, after exhausting voluntary furloughs in the mix-and-mold department, Saint-Gobain reinstituted the 7.5-hour work day. When business picked up in the spring, Saint-Gobain reverted to 8-hour shifts. It made all of these modifications unilaterally.

That August, unionization came to the mix-and-mold department. As a result of a Board-supervised election, the employees selected the International Union of Automobile, Aerospace and Agricultural Implement Workers of America, Region 9A, AFL-CIO (the Union) as their collective bargaining representative. Saint-Gobain challenged the election. The Board overruled Saint-Gobain's objections, certified the Union, and notified Saint-Gobain of the certification.

On December 17, 2001, Saint-Gobain reinstituted 7.5-hour shifts for mix-and-mold employees, effective January 5, 2002. Saint-Gobain put the shortened shifts into effect as scheduled. Once again, the company acted unilaterally; it did not give prior notice of its decision to the Union, nor did it afford the Union an opportunity to bargain before reducing employee hours.

Still overstaffed, Saint-Gobain offered voluntary furloughs to its workforce in January of 2002. When that step proved ineffectual, it negotiated a voluntary separation agreement with the Union. That pact, which was executed in March of 2002, resulted in a number of permanent layoffs. Since then, the size of the mix-and-mold workforce has declined through normal attrition. The remaining employees continue to work 7.5-hour shifts.

Saint-Gobain and the Union have engaged in extensive negotiations over the terms and conditions of employment (including hours of work). These discussions have failed to yield a comprehensive collective bargaining agreement. At last report, the negotiations had reached an impasse as to working hours.

On March 8, 2002, the Union filed an unfair labor practice charge with the Board. It filed an amended charge on May 29, 2002. In the charging documents, the Union alleged that Saint-Gobain violated the NLRA when it unilaterally reduced working hours in January of 2002 without prior notice to, or any bargaining with, the Union.[1]

Faced with a set of undisputed facts, the administrative law judge (ALJ) recommended that the Board find that Saint-Gobain had committed an unfair labor practice within the meaning of sections 8(a)(1) and (5) of the NLRA. He recommended a remedy that

---

[1]The Union also alleged that Saint-Gobain committed another unfair labor practice when it unilaterally switched employees' medical insurance plans. That issue is not before us.

would require Saint-Gobain to: (i) reinstate the 8-hour work day; (ii) award backpay to adversely affected employees up to the date of that reinstatement; and (iii) engage in collective bargaining with the Union as to hours of work and related conditions of employment.

Saint-Gobain filed exceptions to the ALJ's decision. The Board rejected these exceptions and adopted the ALJ's recommendations in their entirety. See Saint-Gobain Abrasives, Inc., 343 N.L.R.B. No. 68 (Oct. 29, 2004). The Board now petitions for enforcement of its order. The Union has intervened in support of the Board's petition but has not filed a brief.

In this venue, Saint-Gobain concedes its liability for the charged unfair labor practice and contests only the remedial portion of the Board's order. It claims that the remedy is punitive and contravenes the tenets undergirding the NLRA. See, e.g., NLRB v. Strong, 393 U.S. 357, 359 (1969) (explaining that, though broad, the NLRA's grant of remedial power "does not authorize punitive measures"). More specifically, Saint-Gobain claims that the Board erred (i) by not tolling backpay as of March 7, 2002 (the date when management and the Union signed the voluntary separation agreement) and (ii) by directing reinstatement of the 8-hour work day (inasmuch as the voluntary separation agreement eliminated the need for such reinstatement as well). Since the Union agreed to layoffs in March of 2002, this thesis

-5-

runs, it surely would have agreed to a reduction in hours of work at that point in time.

Saint-Gobain also assigns error to the final feature of the Board's designated remedy: its directive that Saint-Gobain bargain further with the Union. In this regard, Saint-Gobain notes that the parties already have engaged in extensive bargaining and have reached an impasse. Further negotiations are, therefore, unnecessary — and might even prove to be counterproductive.

The Board's initial response to this asseverational array is that all of these arguments have been waived. The Board maintains that, by only objecting generally to the ALJ's proposed remedy, Saint-Gobain did not adequately raise before the Board the challenges that it now seeks to mount and, therefore, cannot raise those points in response to a petition for enforcement. Saint-Gobain's rejoinder is that its objections were not so vague as to preclude judicial review.

The general exhaustion requirement that prevails in administrative matters is a bedrock principle: "as a general rule[,] courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the [appropriate] time." United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952). We have described this raise-or-waive rule as creating "a win-win situation" because "adhering to it simultaneously enhances the

efficacy of the agency, fosters judicial efficiency, and safeguards the integrity of the inter-branch review relationship." P. Gioioso & Sons, Inc. v. OSHRC, 115 F.3d 100, 104 (1st Cir. 1997).

Section 10(e) of the NLRA, 29 U.S.C. § 160(e), unreservedly embraces this rule. In relevant part, the statute provides that when the Board petitions for judicial enforcement, "[n]o objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." Id. That statutory mandate is clear: if a particular objection has not been raised before the Board, a reviewing court, in the absence of extraordinary circumstances, is without jurisdiction to consider the issue in a subsequent enforcement proceeding. See, e.g., Woelke & Romero Framing, Inc. v. NLRB, 456 U.S. 645, 665 (1982) (holding that the court of appeals lacked jurisdiction to consider an issue not raised by either party before the Board); Local Union No. 25 v. NLRB, 831 F.2d 1149, 1155 (1st Cir. 1987) (similar); cf. 29 C.F.R. § 102.46(b)(2) ("Any exception to a ruling, finding, conclusion, or recommendation which is not specifically urged shall be deemed to have been waived.").

The case before us is not as cut-and-dried as one in which no pertinent objection was made. See, e.g., Local Union No. 25, 831 F.2d at 1155. Here, Saint-Gobain, in addition to

-7-

contesting liability, filed a general objection to the remedial portion of the ALJ's recommended order. That objection stated in relevant part that "[t]he ALJ erred in recommending . . . the remedies set forth in the decision [because those remedies] are not supported by the evidence or by the law." In its supporting brief before the Board, Saint-Gobain again made a general averment that "the ALJ's findings and conclusions are inconsistent with the record evidence and applicable law [and that as] a result, the ALJ's recommended remedy and order are also inconsistent with the record evidence and applicable law, and therefore should not be adopted." But Saint-Gobain's references to the ALJ's recommended remedy end there.[2] Consequently, we must decide whether, in the labor law context, a general objection, like this one, suffices to preserve a more specific (but encompassed) issue for judicial review.

Although our own case law is silent on this precise question, the legal landscape is replete with guidance. The seminal case is Marshall Field & Co. v. NLRB, 318 U.S. 253 (1943) (per curiam). There, the Supreme Court held that an objection that

_____

[2]Saint-Gobain's claim that it raised other, more specific remedy-related arguments to the Board's regional counsel is unsupported by the record. Moreover, it is doubtful whether presentation of an argument at that stage and in that manner, without more, would suffice to preserve a claim of error. Cf. NLRB v. United Shoe Mach. Corp., 445 F.2d 633, 634 (1st Cir. 1971) (concluding that registering a complaint through a "letter to the regional compliance officer and in a conference with the acting regional director" was insufficient for section 10(e) purposes).

the examiner erred "in making each and every recommendation" was insufficient to grant jurisdiction for judicial review of a more particularized challenge. Id. at 255. The test is whether the objection, fairly read, apprises the Board that the objector intended to pursue the issue later presented to the court. Id. The objection in Marshall Field was too general to pass this test. Id.

Other courts of appeals have embroidered the basic rule of Marshall Field. A representative case is Quazite v. NLRB, 87 F.3d 493 (D.C. Cir. 1996). The court there made it pellucid that when a party files only a blanket objection to the recommended remedy without providing any indication of the thrust of that objection, the objection alone furnishes inadequate notice to the Board of the objecting party's particular argument and, thus, does not satisfy section 10(e). See id. at 497-98. There is no shortage of other cases to the same effect. See, e.g., NLRB v. Price's Pic-Pac Supermarkets, Inc., 707 F.2d 236, 241 (6th Cir. 1983) (per curiam) (holding that an objection "to each and every provision of the Remedy" did not pass muster under section 10(e)); Singer Co. v. NLRB, 429 F.2d 172, 180-81 (8th Cir. 1970) (holding that an exception to "[t]he Recommended Order in its entirety [as] against the preponderance of the evidence and the law" was too vague to preserve the court's jurisdiction over a specific issue not otherwise argued before the Board).

Saint-Gobain's objection falls well within the compass of these authorities. It is a general objection to the remedy as a whole, and the supplemental brief adds nothing of substance to it. Together, those documents merely reassert Saint-Gobain's contention that it did not violate the NLRA and, therefore, that the imposition of any remedy would be inappropriate. This general objection is wholly insufficient to put the Board on notice of the specific arguments that Saint-Gobain now attempts to advance. Under section 10(e), then, we are without jurisdiction to entertain those arguments.[3] See Alwin Mfg. Co. v. NLRB, 192 F.3d 133, 144 (D.C. Cir. 1999) ("Where . . . a party excepts to the entire remedy, and provides no indication of the basis for its objection, the exception alone provides insufficient notice to the Board of the party's particular arguments to satisfy section 10(e)."); Quazite, 87 F.3d at 497 (concluding that an objection to a remedial order "in its entirety" was "far too broad to preserve a particular issue for appeal").

The raise-or-waive rule is, of course, not absolute. However, the two exceptions that come to mind afford no succor to Saint-Gobain.

---

[3]This holding is consistent with our treatment of exceptions in other administrative law contexts. See, e.g., P. Gioioso, 115 F.3d at 107 (holding that, under the Occupational Safety and Health Act, a party desiring to preserve an issue for judicial review must raise the issue clearly before the agency and articulate the issue in its petition for judicial review).

The first exception involves section 10(e)'s caveat that, even without proper objection, an issue may be appropriate for judicial review under "extraordinary circumstances." Saint-Gobain does not argue that extraordinary circumstances obtained here, and in all events, the record would not support such a claim. The procedural history of this case is pedestrian and Saint-Gobain, despite its waiver, still may challenge the salient portions of the Board's remedial order in a later compliance proceeding. See, e.g., Pegasus Broad. of San Juan, Inc. v. NLRB, 82 F.3d 511, 513 n.3 (1st Cir. 1996) (noting that "[s]uch a bifurcated procedure is common and has met with approval").

A second, exogenous exception is also available in certain circumstances. Notwithstanding the mandate of section 10(e), the court of appeals retains residual jurisdiction to consider a first-time challenge to a remedy on the ground that the remedy is obviously beyond the Board's authority. See Detroit Edison Co. v. NLRB, 440 U.S. 301, 311 n.10 (1979). In this case, however, the Board's authority to impose remedies such as backpay, reinstatement, and compulsory bargaining is unquestioned.

We need go no further. Concluding, as we do, that Saint-Gobain's objection to the remedial portion of the Board's order lacked the requisite specificity to preserve for judicial review

the issues that it has now briefed,[4] we grant the Board's petition for enforcement.

**So Ordered**.

---

[4]This conclusion renders it unnecessary for us to consider the parties' substantive arguments anent the appropriateness of the Board's remedial order.