# United States Court of Appeals
## For the First Circuit

No. 05-1274

NATIONAL LABOR RELATIONS BOARD,

Petitioner/Cross-Respondent,

v.

PAN AMERICAN GRAIN CO., INC. and
PAN AMERICAN GRAIN MANUFACTURING CO., INC.,

Respondent/Cross-Petitioner.

ON APPLICATION FOR ENFORCEMENT AND CROSS-PETITION FOR
REVIEW OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD

Before

Boudin, <u>Chief Judge</u>,
Selya, <u>Circuit Judge</u>,
and Stahl, <u>Senior Circuit Judge</u>.

<u>Ruperto J. Robles</u> and <u>Rafael J. Lopez</u> on brief for petitioner/cross-respondent.

<u>Arthur F. Rosenfeld</u>, Acting General Counsel, <u>John E. Higgins, Jr.</u>, Deputy General Counsel, <u>Margery E. Lieber</u>, Acting Associate General Counsel, <u>Aileen A. Armstrong</u>, Deputy Associate General Counsel, <u>Meredith L. Jason</u> and <u>Christopher W. Young</u> on brief for respondent/cross-petitioner.

December 22, 2005

**BOUDIN, <u>Chief Judge</u>.** We have before us an application by the National Labor Relations Board ("the Board" or "NLRB") for enforcement of the order it issued against a grain processing company, Pan American.[1] Pan American cross-petitions to set aside portions of the Board's order.

Pan American is a Puerto Rican company that manufactures animal feed and processes rice for human consumption. Congresso de Uniones Industriales de Puerto Rico ("the Union") has been the collective-bargaining representative of Pan American's production and maintenance employees for many years, but the last collective-bargaining agreement between the Union and Pan American expired in 2000 for two Pan American facilities (the Amelia and Corujo facilities) and 2002 for the other (the Arroz Rico facility).

From 1996 to 2002, Pan American undertook a long-term project designed to modernize and automate some of its facilities; it initiated this project to help offset the cost of complying with an Environmental Protection Agency consent decree. These upgrades caused the company's staffing needs gradually to decline, and Pan

---

[1]Pan American is two corporate entities, Pan American Grain Co., Inc. and Pan American Grain Mfg. Co., Inc., whose brief states that they are "affiliated business enterprises with common officers, directors, management and supervision, formulating and administering a common policy affecting operations."

American laid off one or two employees each year during the modernization.

In January 2002, employees at the Amelia and Corujo facilities went on strike. The strike caused a decline in sales. The following month, the company president met with two managers and the group decided that, because of the decline in sales and the increased efficiency resulting from the modernization, fifteen employees should be permanently laid off. On February 27, 2002, Pan American told fifteen of the striking employees that their positions had been permanently eliminated. Pan American was later charged with committing various unfair labor practices in violation of the National Labor Relations Act ("the Act" or "NLRA"), 29 U.S.C. §§ 151 et seq. (2000).

In the proceedings that followed, the NLRB found that Pan American had engaged in numerous unfair labor practices, but the only such finding challenged on petition to this court was that Pan American had violated section 8(a)(5) and (1) of the Act, 29 U.S.C. § 158(a)(5), (1), by failing to give the Union notice and an opportunity to bargain as to the layoff decision and its effects before laying off these fifteen employees.[2] To remedy this

_____

[2]As Pan American did not contest the other findings by the Board, the Board is entitled to summary enforcement of those portions of its order related to these findings. See E.C. Waste, Inc. v. NLRB, 359 F.3d 36, 41 (1st Cir. 2004).

-3-

violation, the Board ordered Pan American to reinstate the fifteen employees and compensate them with back pay.

Pan American challenges the Board's finding as to the section 8(a)(5) and (1) violation and the remedy imposed in connection with this violation. It argues first that it was not required to bargain with the dismissed employees regarding the decision to dismiss them, conceding that it was required to bargain regarding the effects of the layoff decision. Second, Pan American asserts that in light of its limited bargaining duty, the remedy of reinstatement and full back pay was improper, and under Board precedent in Transmarine Navigation Corp., 170 N.L.R.B. 389 (1968), only limited back pay could be required.

The Board asserts that Pan American is precluded from making its first argument on this petition because it did not present it to the Board in the proceedings below. As for Pan American's second argument, the Board urges that we should dispose of it by finding that the facts of this case do not warrant the limited remedy Pan American seeks. We conclude that Pan American's arguments are interrelated, were presented to the Board, and cannot be resolved without further explanation by the Board.

To understand both the waiver argument and the merits of the case requires a brief explanation of the background law. Under section 8(a)(5) of the NLRA, 29 U.S.C. § 158(a)(5), an employer's

-4-

"refus[al] to bargain collectively with the representatives of his employees" constitutes an "unfair labor practice"; section 8(d) of the Act, id. § 158(d), specifies that the duty "to bargain collectively" includes the obligation to "confer in good faith with respect to wages, hours, and other terms and conditions of employment." Absent contrary provisions in a collective bargaining agreement, there are thus some decisions as to which a unionized employer must bargain with the union (e.g., wages and hours); others as to which it normally need not, "such as choice of advertising and promotion, product type and design, and financing arrangements," which "have only an indirect and attenuated impact on the employment relationship," First Nat'l Maint. Corp. v. NLRB, 452 U.S. 666, 676-77 (1981); and yet others entailing obligations that fall somewhere in between.

The present case may or may not fall in this "in between" category. In certain situations, a decision to order layoffs may be the prerogative of management but an obligation may still exist to bargain with the union as to "effects" of the layoffs; in other words, management may have to bargain about whether and to what extent to provide severance to the laid-off employees even though it may not have to discuss whether to make the layoffs. Both the

-5-

courts (e.g., Providence Hospital)[3] and the Board (notably in Transmarine)[4] have endorsed such a qualified duty in certain circumstances.

Before the Board, Pan American argued that it did not have to bargain with the Union at all so no relief was proper; but in the alternative it argued that at most its bargaining obligation was limited to the "effects" of the layoffs and therefore back pay for a limited period would be the most that should be awarded. The latter argument depends upon two elements: that only effects bargaining was required in this case, and that where only effects bargaining is required, the limited back pay remedy prescribed in Transmarine is appropriate for a breach of the bargaining duty (because reinstatement would defeat the layoff prerogative).

Pan American made this alternative two-part argument both in its exceptions to the findings of the administrative law judge

---

[3]See Providence Hosp. v. NLRB, 93 F.3d 1012, 1018 (1st Cir. 1996) ("[U]nions generally enjoy the right to bargain over the effects of decisions which are not themselves mandatory subjects of collective bargaining."); NLRB v. New England Newspapers, Inc., 856 F.2d 409, 413 (1st Cir. 1988) ("Although the employer is not obligated to bargain regarding the decision to sell its business, the effects of that sale are . . . a mandatory subject of bargaining . . . .").

[4]Transmarine, 170 N.L.R.B. at 390 (requiring employer to bargain over effects of shutdown, and imposing "a limited backpay requirement"); see also Melody Toyota, 325 N.L.R.B. 846, 846 (1998) (noting that the ALJ's order "provides, inter alia, for the Board's standard backpay remedy in effects bargaining cases as modeled after the remedy set forth in Transmarine Navigation Corp.").

("ALJ") and in its request for rehearing before the Board. In its exceptions, for example, Pan American sought to qualify its bargaining obligation, focusing on the difference between a layoff decision for "economic reasons" and a layoff decision resulting from a successful modernization program. Pan American then concluded its argument against the ALJ's remedy by stating:

> [W]e contend that inasmuch as the record does show that the layoffs were an effect of an employer's decision, based primarily on operational reasons as well as staffing needs, the determination was related to the scope and direction of business and accordingly the proper remedy would be that of a limited back pay. See Transmarine Navigation Corp., 170 NLRB 389 (1968).

A petitioner is barred from making in court arguments not presented to the Board. NLRB v. Saint-Gobain Abrasives, Inc., 426 F.3d 455 (1st Cir. 2005), explained that under section 10(e) of the Act, 29 U.S.C. § 160(e), the reviewing court has jurisdiction to decide an issue on a petition to set aside an NLRB order only if an objection made below, "fairly read, apprises the Board that the objector intended to pursue the issue later presented to the court." Saint-Gobain, 426 F.3d at 459 (citing Marshall Field & Co. v. NLRB, 318 U.S. 253, 255 (1943) (per curiam)).

However, we cannot agree with the Board's brief that Pan American failed to make its argument to the Board. The "scope and direction of business" language and the attempted distinction

-7-

between "economic" and "modernization" reasons for discharge bear directly on the extent of the employer's duty to bargain. Indeed, the scope-and-direction phrase resembles language in Justice Stewart's oft-cited concurrence in Fibreboard Paper Prods. Corp. v. NLRB, 379 U.S. 203, 223 (1964) (Stewart, J., concurring), dealing with just such line-drawing as to the extent of the duty to bargain.

Furthermore, Transmarine is the common citation for the view that a limited back pay remedy is the proper answer where the employer breached only a duty to bargain about effects. E.g., Melody Toyota, 325 N.L.R.B. 846, 846 (1998); see also NLRB v. Emsing's Supermarket, Inc., 872 F.2d 1279, 1289-91 (7th Cir. 1989). To rely on Transmarine, as Pan American did, for the view that "the proper remedy would be that of a limited back pay" makes sense only if the predicate is the employer's claim that its duty to bargain was limited (i.e., because the layoffs were assertedly a management prerogative). The two elements are parts of an embracing claim that there was only a limited duty warranting only a limited remedy.

We agree that Pan American could have done a better job at the Board level in clarifying its position. In part, Pan American invited confusion by arguing (permissibly--but perhaps not with perfect lucidity) that it had no duty to bargain at all but,

-8-

if it did, it was a limited duty justifying only the Transmarine remedy. Yet contributing to the confusion is the fact that the Board has not made clear where the full duty to bargain leaves off and the limited "effects" duty supercedes it. Anyway, enough was said to alert the Board to the employer objection that only a limited duty and the Transmarine remedy applied in this case.

No answer to the objection is provided in the Board's decision. In rejecting a claim of retaliatory firings under section 8(a)(3) and (1) of the Act, 29 U.S.C. § 158(a)(3), (1), the ALJ had explicitly credited Pan American's claim that the layoff of the fifteen employees was motivated (at least in part) by the modernization and automation project dating from 1996. In summarizing his factual findings on this question, the ALJ stated:

> The evidence substantiating [Pan American's] position that an ongoing modernization and automation project had reduced staffing needs was detailed, plausible, and uncontroverted; it outweighs the evidence casting doubt on the veracity of [Pan American's] explanation. [Pan American] has shown that it more likely than not would have decided to implement its February 2002 layoff because its staffing needs decreased, even absent the employees' protected activities.

The ALJ also found that another possible motivation for the layoffs was a "dip in sales."

Yet when the ALJ discussed the failure to bargain charges, he simply said that "layoff decisions are a mandatory

subject of bargaining," failure to bargain violates the Act, and "the traditional and appropriate Board remedy for an unlawful unilateral layoff based on legitimate economic concerns" includes reinstatement and full back pay. He did not so much as mention the issue of the possible motivation of the layoffs as pertinent to whether full reinstatement or only the limited back pay remedy should be adopted.

Pan American responded, as described and quoted above, by arguing to the Board that Pan American's rationale for the layoffs--accepted by the ALJ himself–warranted at most only the Transmarine remedy of limited back pay. The Board, faced with Pan American's objection, explained the difference between the full and limited back pay remedies and then continued with two sentences that explain very little:

> Here, we have found that [Pan American's] decision to lay off employees was a mandatory subject of bargaining, and that [Pan American] violated Section 8(a)(5) and (1) by failing to satisfy its obligation to bargain both over the decision and its effects. Accordingly, we find that the full backpay and reinstatement remedy is appropriate.

In substance the Board treats a breached obligation to bargain over the decision as well as its effects as warranting the "full" (as opposed to the Transmarine) remedy. What is missing is any explanation why, in light of the ALJ's own factual findings,

-10-

Pan American's "decision to lay off employees was a mandatory subject of [full scale] bargaining" rather than bargaining solely about effects.  Yet some explanation is needed precisely because where the line should be drawn is far from clear.

Justice Stewart's concurrence in Fibreboard eschewed mandatory bargaining for decisions that "lie at the core of entrepreneurial control," such as "[d]ecisions concerning the commitment of investment capital and the basic scope of the enterprise."  Fibreboard, 379 U.S. at 223 (Stewart, J., concurring).  It was followed by First Nat'l, a case involving a partial shutdown of an employer's business, which offered three separate categories of managerial decisions and a balancing test, noting that "other types of management decisions"--including "automation"--"are to be considered on their particular facts." First Nat'l, 452 U.S. at 667, 676-79, 686 n.22.

We do not know whether the NLRB now views layoff decisions prompted by modernization to be mandatory subjects of bargaining, resolving the issue seemingly left open in First Nat'l, and, if so, why, or whether it decided this case on its "particular facts," and, if so, what those facts were.  Possibly, the Board attributed importance to the fact that the layoffs owed something to the loss of business due to the strike but, if so, this too is

unexplained, nor do we know how multiple motives for layoffs should be analyzed.

The issue appears to be one of considerable importance. To say that an employer must bargain about whether to make layoffs caused by modernization does not seem far from saying, in substance, that it must bargain about whether to modernize. Perhaps there is some reason to distinguish between the two, but it is easy to see how the two steps are linked in practice. Often enough, an employer who cannot recoup costs of modernizing by reducing employment will have little reason to invest.

In all events, we do not understand the Board's rationale for classifying this case as one where the employer had (in the Board's words) an "obligation to bargain both over the decision [the layoffs] and its effects." The result may or may not be sound, but until we understand its basis, we cannot effectively review it. See NLRB v. Auciello Iron Works, Inc., 980 F.2d 804, 812-13 (1st Cir. 1992). And if there is an obvious explanation, it has not been supplied by the Board's brief on appeal.

The application of the Board for enforcement of its order is granted in part, as to paragraphs (1)(a), (b), (d), (e) (except as it applies to the employees laid off on February 27, 2002), (f), and (g), and paragraphs (2)(a), (b), (e) (except as it applies to the employees laid off on February 27, 2002), (f) (except as it

-12-

applies to the employees laid off on February 27, 2002), (g), (h), (i) (except for paragraphs in the notice pledging to bargain with the Union as to the February 27, 2002, layoffs, and to reinstate and make whole the employees laid off on that day), and (j).

As to paragraphs (1)(c) and (e) (insofar as it applies to the employees laid off on February 27, 2002), and paragraphs (2)(c), (d), (e) (insofar as it applies to the employees laid off on February 27, 2002), (f) (insofar as it applies to the employees laid off on February 27, 2002), and those portions of (2)(i) requiring the posted notice to include a pledge to bargain with the Union as to the February 27, 2002, layoffs, and to reinstate and make whole the employees laid off on that day, the order is <u>vacated</u> and the case <u>remanded</u> to the Board for further proceedings consistent with this opinion. Each side to bear its own costs on appeal.

<u>It is so ordered</u>.

**<u>Dissent follows</u>**.

**STAHL**, **Senior Circuit Judge**, **dissenting**.    I do not agree with the majority that Pan American's objections before the Board were sufficient to apprise the Board that the company would later argue, on appeal, that it had no duty to bargain about the layoffs in the first place.    I would hold that Pan American waived the bargainability issue by not raising it below, and that Section 10(e) of the NLRA precludes our entertaining the question whether the February 2002 decision to lay off fifteen striking employees was a mandatory subject of bargaining.    I therefore respectfully dissent.

We very recently confirmed that the "statutory mandate" set out in Section 10(e) "is clear: if a particular objection has not been raised before the Board, a reviewing court, in the absence of extraordinary circumstances, is without jurisdiction to consider the issue in a subsequent enforcement proceeding." NLRB v. Saint-Gobain Abrasives, Inc., 426 F.3d 455, 459 (1st Cir. 2005).    When it is not immediately apparent whether the objection a party made below is the same as the issue it now seeks to raise on appeal, the critical inquiry "is whether the objection, fairly read, apprises the Board that the objector intended to pursue the issue later presented to the court."    Id. (citing Marshall Field & Co. v. NLRB, 318 U.S. 253, 255 (1943) (per curiam)).    In the present case, Pan American argues on appeal that it had no duty

-14-

to bargain about the layoffs of fifteen employees in February 2002, but it did not make this objection below in so many words.

In cases such as this one, "where a party asserts that it has objected to the Board, but the objection is not unmistakable," our review "must be guided by the purposes of section 10(e) and necessarily will be highly fact specific." Local 900, Int'l Union of Elec., Radio & Mach. Workers (IUE) v. NLRB, 727 F.2d 1184, 1193 (D.C. Cir. 1984). The purposes served by Section 10(e) are twofold. First, the section "has a notice function that ensures that the Board has the opportunity to resolve all issues properly within its jurisdiction." Id. at 1191. Second, the section "insures against repetitive appeals to the courts" by requiring aggrieved parties to present all objections to the Board in the first instance. Id.

Here, Pan American presented two primary objections to the Board.[5] First, Pan American contended that the ALJ erred in finding an unfair labor practice, because the company had, in fact, given proper notice to the Union and showed its willingness to bargain, and it was the Union's recalcitrance, rather than any misbehavior on Pan American's part, that prevented bargaining

---

[5]The company also objected to a particular factual finding the ALJ made: that certain former strikers made an offer to return to work. This point is not at issue on appeal.

-15-

from taking place. This objection, far from intimating that the company had no duty to bargain, assumes that there was such a duty. Second, Pan American objected that the ALJ should not have recommended a remedy of reinstatement and full back pay for the fifteen terminated employees. I simply cannot agree with the majority when it states, "Before the Board, Pan American argued that it did not have to bargain with the Union at all so no relief was proper, but in the alternative it argued that at most its bargaining obligation was limited to the 'effects' of the layoffs." Slip Op. at 6. This statement not only mischaracterizes Pan American's arguments before the Board[6] but assumes as plain fact what is actually a fervently contested issue in this case.

The majority finds that Pan American's second objection, its challenge to the remedy, was sufficient to apprise

---

[6]In its first exception, Pan American stated, "Not only did Respondent give proper notice of the future layoffs to the Union, but the latter failed to timely bargain over said issue, thus waiving its right to do so." In its second exception, the company stated, "[I]nasmuch as the record does show that the layoffs were [the result] of an employer's decision, based primarily on operational reasons as well as staffing needs, the determination was related to the scope and direction of business and accordingly the proper remedy would be that of a limited back pay." At best, this second exception could be interpreted as raising the bargainability issue in a roundabout manner, and that is the argument the majority makes. But it is simply not correct to imply, as the majority does, that Pan American raised this objection directly and explicitly, for it did not.

-16-

the Board that the company would later argue that there was no duty to bargain about the layoffs in the first place. I disagree. As the majority recognizes, it is undoubtedly possible to infer a connection between the question of what kind of remedy is appropriate after an employer's failure to engage in statutorily required bargaining and the question of the extent of the employer's original duty to bargain. The connection arises from the fact that when an employer violates the Act by terminating employees without engaging in mandatory bargaining, the Board's customary remedy is reinstatement and back pay for the terminated employees. See Saint-Gobain, 426 F.3d at 461. In contrast, when an employer is not required to bargain about terminating an employee, but must bargain only about the effects of that termination (such as severance packages), the Board generally imposes a more limited remedy, consisting of back pay dating only from the date of the Board's order, without reinstatement. See Transmarine Navigation Corp., 170 N.L.R.B. 389, 390 (1968). See also Bridon Cordage, Inc., 329 N.L.R.B. 258, 259 n. 11 (1999) (explaining distinction).

Thus, the argument goes that a person versed in the tenets of labor law could infer that, because Pan American sought a limited back pay remedy, the company believed such a remedy was appropriate because it had no duty to bargain about its

underlying decision to terminate the employees. I believe, however, that this court should not have to infer the possible legal arguments on which a party's complaints before the Board might be based. For one thing, the Board will be better able to administer its work if parties are required to make explicit to the Board the reasons for their objections. This is because, without such a "clear statement rule," the disposition of a particular case will depend on the depths to which a particular appellate panel is willing to dig in order to uncover a plausible connection between the language used in an objection before the Board and a theory on which the court might disturb the Board's order. What is more, to allow parties to raise imprecise objections in the hopes of later striking gold with the appeals court "would be to set the Board up for one ambush after another," Quazite v. NLRB, 87 F.3d 493, 497 (D.C. Cir. 1996), with the ambushing party's rate of success varying with the level of labor law expertise held by the circuit court panel to which the appeal is assigned.[7]

---

[7]Of course, a party need not use an impossibly precise formulation of words. For example, in IUE, the court found that the union had adequately raised the question of whether a remedy applied retroactively, even though the union's objections did not mention the word "retroactive." See 727 F.2d at 1193. Nevertheless, the court's benchmark remained whether the objection provided sufficient notice to the Board as to the contested issue. The court found that "in light of the union's objection to the

In this case, it is hardly certain that Pan American challenged the ALJ's recommended remedy of reinstatement and back pay out of the conviction that the company had no duty to bargain over the underlying management decision (although that is one possible interpretation). Another interpretation, at least equally plausible, is that Pan American thought the order of reinstatement was improper because it no longer had the need for fifteen additional employees. In fact, Pan American's notice of exceptions to the Board confirms that this was precisely the company's position:

> [A] full back pay and reinstatement remedy is not proper in this case inasmuch as it has been proven that Respondent's operations does not harbor the need for the 15 positions that were eliminated as per the modernization and automation of the plant, which resulted in the employees' layoffs.

Just as a general objection to "the remedies set forth in the [ALJ's] decision" does not suffice to raise a later appeal on the grounds that the remedy was unduly punitive, see Saint-Gobain,

---

remedy [and the context thereof]. . . it is inconceivable that the Board did not understand that the union objected on retroactivity grounds and that the union would raise the issue on appeal." Id. at 1193 (emphasis added). In contrast, in this case, it is far from inconceivable that the Board could have failed to discern from Pan American's exceptions that the company intended to raise the bargaining issue on appeal. Rather, it is quite possible that Pan American did not, in fact, have any such intention at the time of its objections before the Board.

426 F.3d at 459,[8] Pan American's objection to the remedy imposed in this case, which could be interpreted in various ways, should not suffice to preserve its current argument on appeal that the remedy was inappropriate because the company had no duty to bargain.

I note that this is not a case "[w]here a party explicitly excepts to a remedy, and offers some explanation for its objection in its brief" such that we might hold "that there is sufficient notice to the Board to satisfy section 10(e)." Alwin Mfg. Co. v. NLRB, 192 F.3d 133, 144 (D.C. Cir. 1999). To the contrary, in its brief replying to the NLRB General Counsel's answer to its objections, Pan American merely reiterated its argument that the ALJ's remedy was unduly burdensome, stating, "[T]he record stands to the fact that the operations at [the animal feed production plant] currently do not need 15 additional employees in order to operate. Therefore, an order to reinstate the 15 laid off employees . . . is . . . an undue burden on this party's operations." This is further evidence that Pan American was not even attempting to raise the bargainability issue before the Board.[9]

_____

[8]As we noted in Saint-Gobain, "[t]here is no shortage of other cases to the same effect." See id. at 460 (collecting cases).

[9]Moreover, the Board's opinion below is entirely consistent with the reasonable view that Pan American's objections were

-20-

Our review might be different if resolution of the duty-to-bargain question were straightforward. But here, the question is complicated and difficult to resolve, and the Board would have been justified in concluding, as it evidently did, that a party intending to raise the issue would have provided the Board with developed argumentation in support of its position. As the Supreme Court has said, an employer generally cannot take unilateral action regarding mandatory subjects of bargaining, but must first bargain over them with the union. NLRB v. Katz, 369 U.S. 736, 738-39 (1962). Mandatory bargaining subjects include "terms and conditions of employment." 29 U.S.C. § 158(d). Thus,

---

limited to (a) an assertion that the company met its duty to bargain and that it was the Union who refused to cooperate, and (b) a complaint that the company should not have to reinstate workers whose labor Pan American felt it no longer needed. The Board's Decision and Order, in addition to adopting the ALJ's recommendations, contained two holdings. First, the Board rejected Pan American's contention that it complied with the Act by providing the Union an opportunity to bargain. Second, the Board held that, given that Pan American's decision to lay off employees was a mandatory subject of bargaining, the remedy of full back pay and reinstatement was appropriate, rather than the limited remedy Pan American had requested. Although the Board's failure to discuss an issue does not necessarily indicate that a party has not adequately objected, see IUE, 727 F.2d at 1191, the fact that the Board did not even mention a dispute about whether the layoffs were bargainable supports my conclusion that the issue, which is a complicated one, was not raised. In fact, Pan American's imprecise objection "may well account for the Board's failure to consider this question in its decision and to make findings with respect to it," Marshall Field, 318 U.S. at 255, which the majority now instructs the Board to do on remand.

an employer cannot unilaterally change employees' working hours or pay rate, for example, without first bargaining with the union. Employer decisions such as layoffs, relocations of jobs, and plant closings, in contrast, are sometimes mandatory subjects of bargaining and sometimes not, depending on the reasons for the decision and whether the issues raised by the decision are amenable to resolution through the bargaining process. See First Nat'l Maint. Corp. v. NLRB, 452, U.S. 666, 678 (1981). The exact location of the line separating these two categories of employer decisions is indistinct. Compare, e.g., United Food & Commercial Workers Int'l Union, Local 150-A v. NLRB, 1 F.3d 24, 31-32, 35 (D.C. Cir. 1993) (endorsing three-part test for exempting certain "entrepreneurial control" decisions from duty to bargain) with Dorsey Trailers, Inc. v. NLRB, 233 F.3d 831, 842-43 (4th Cir. 2000) (holding that as long as employer decision requires capital expenditure, decision is outside duty to bargain).

In short, the issue of mandatory bargaining is not as inextricably tied to the question of remedy as the majority believes. If Pan American wished to challenge the ALJ's finding that it was required to bargain about the layoffs, it should have said so clearly. The Board — and this Court — should not be required to connect the dots without aid from the parties.

I would grant enforcement of the Board's order in its entirety.