# United States Court of Appeals
## For the First Circuit

No. 05-1274

NATIONAL LABOR RELATIONS BOARD,

Petitioner/Cross-Respondent,

v.

PAN AMERICAN GRAIN CO., INC. and
PAN AMERICAN GRAIN MANUFACTURING CO., INC.,

Respondent/Cross-Petitioner.

ON APPLICATION FOR ENFORCEMENT AND CROSS-PETITION FOR
REVIEW OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD

Before

Boudin, <u>Chief Judge</u>,
Selya, <u>Circuit Judge</u>,
and Stahl, <u>Senior Circuit Judge</u>.

    <u>Ruperto J. Robles</u> and <u>Rafael J. Lopez</u> on brief for
respondent/cross-petitioner.
    <u>Arthur F. Rosenfeld</u>, Acting General Counsel, <u>John E. Higgins,
Jr.</u>, Deputy General Counsel, <u>Margery E. Lieber</u>, Acting Associate
General Counsel, <u>Aileen A. Armstrong</u>, Deputy Associate General
Counsel, <u>Meredith L. Jason</u> and <u>Christopher W. Young</u> on brief for
petitioner/cross-respondent.

SUPPLEMENTAL OPINION
May 31, 2006

**BOUDIN, Chief Judge**.  After our decision in this case, NLRB v. Pan American Grain Co., 432 F.3d 69 (1st Cir. 2005), a controversy developed between the parties concerning the scope and phrasing of the order to be issued to enforce those portions of the National Labor Relations Board's original order that we did not vacate on review.  The controversy is a narrow but important one.

The original dispute in this petition for review concerned the scope of obligations owed by the employer, Pan American Grain Company, Inc. ("Pan American"), in relation to 15 employees who were laid off in February 2002 while they were on strike.  Pan American, 432 F.3d at 70-71.  The Board found that Pan American had a duty to bargain with the Union over the decision to lay these 15 employees off and, as Pan American concededly did not fulfill this duty, the Board ordered Pan American to reinstate these employees to their former positions and to provide them full back pay--its customary remedy in cases where an employer has a duty to bargain over an employment termination decision but fails to do so.  Id. at 71, 73.

For its part, Pan American argued that its decision to lay off the employees was not the sort of decision covered by the mandatory bargaining requirements of the National Labor Relations Act.  Pan American, 432 F.3d at 71.  Pan American has conceded it had a duty to bargain with the employees over the effects of the layoff, but argued that the proper remedy for its failure to do so

-2-

was to award the employees limited back pay (and no reinstatement) under the Board's rule in Transmarine Navigation Corp., 170 N.L.R.B. 389 (1968). Pan American, 432 F.3d at 71.

On the record before us, we held that the Board had not sufficiently explained its decision that Pan American had a duty to bargain over the layoff decision itself as opposed to only the effects. Id. at 74. In concluding our decision, we vacated those portions of the Board's order that imposed obligations on Pan American with respect to the 15 employees, remanded for further proceedings consistent with our opinion, and granted enforcement of the remaining, uncontested portions of the order pursuant to E.C. Waste, Inc. v. NLRB, 359 F.3d 36, 41 (1st Cir. 2004). Pan American, 432 F.3d at 71 n.2, 74-75.

Our original decision issued on December 22, 2005. On February 6, 2006, the Board filed a motion under Fed. R. App. P. 19 submitting a proposed judgment that the Board stated conformed to our December opinion. In that motion, the Board asked this court to vacate our December judgment and substitute the Board's proposed judgment in its place. On March 21, 2006, this court issued an order explaining that parts of the Board's suggested substitute judgment appeared to be inconsistent with our disposition of the case, and we gave the Board 14 days to respond to our concerns and Pan American then 14 days to reply.

The Board then filed a second proposed substitute judgment, on April 4, 2006, and Pan American filed a reply opposing this latest proposed substitute judgment. The controversy in this latest round of filings concerns what obligations, if any, Pan American has towards the 15 employees laid off in February 2002 independent of and prior to the resolution on remand of the "duty to bargain" issue.

Specifically, the Board asserts that Pan American is required to provide these same 15 employees "with reinstatement to their previous positions, or substantially equivalent positions, that have or will become available subsequent to the unconditional offer to return to work" made by the employees in August 2002, and must further "[m]ake the former strikers whole for any loss of earnings and/or other benefits that they suffered as a result of the discriminatory reduction in their wages and their denial of reinstatement" as positions became available.

The Board's claim turns upon a set of issues that were never presented, or at least never clearly discussed, by either side on the original petition for review. The pertinent background facts are that after abolishing their positions in February 2002, Pan American voluntarily rehired the same 15 employees in October and November 2002, although into different positions than they held prior to their strike and at entry-level wages. The company also

rehired 25 or 26 other employees who had been on strike and whose positions had never been abolished.

Then, in the administrative proceeding that led to the original petition for review, the Board (in addition to ruling on the "duty to bargain" issue as to the 15 employees) found that Pan American had unlawfully reduced the wages of former strikers who returned to work after the strike, and had unlawfully denied these former strikers reinstatement to their former positions, or substantially equivalent positions, as they became available subsequent to the strikers' unconditional offer to return to work. This, the Board said, contravened its rule in Laidlaw Corp., 171 N.L.R.B. 1366, 1369-70 (1968), enforced, 414 F.2d 99 (7th Cir. 1969), cert. denied, 397 U.S. 920 (1970):

> [E]conomic strikers who unconditionally apply for reinstatement at a time when their positions are filled by permanent replacements: (1) remain employees; and (2) are entitled to full reinstatement upon the departure of replacements unless they have in the meantime acquired regular and substantially equivalent employment, or the employer can sustain his burden of proof that the failure to offer full reinstatement was for legitimate and substantial business reasons.

Pan American has not disputed the application of the Laidlaw rule to the other 25 or 26 strikers whose positions were filled by replacement workers rather than permanently eliminated. What is at issue is whether the 15 employees laid off in February 2002 were covered, or in any event could properly be covered, by

the Board's Laidlaw holding.  Pan American points to findings of the administrative law judge ("ALJ") that suggest that those 15 employees' positions were not filled by permanent replacements but were permanently eliminated.  Pan American Grain Co., 343 N.L.R.B. No. 47, at 18-19 (2004).

The Board insists that regardless of whether these 15 employees were entitled to bargain over their layoffs, they are entitled to the Laidlaw relief "because they participated in the strike to the same extent as other employees, were included in the Union's unconditional offer to return to work, and were reinstated by the Company under the same discriminatory terms and conditions of employment as other former strikers."  Pan American responds that providing the 15 laid-off employees with Laidlaw relief would cause this court's decision to remand to "lose any practical effect" by giving the employees quite similar relief regardless of the outcome on remand.

Each side has something to be said in its favor.  In the ALJ's original order, approved largely intact by the Board, the ALJ did suggest (in a footnote) that the Laidlaw remedy was to apply to all the strikers who had been rehired, including the 15 who had been laid off in February 2002.  Pan American, 343 N.L.R.B. No. 47, at 26 n.53.  But there was no explanation as to why and how the Board could apply the Laidlaw doctrine, targeted at economic strikers who are permanently replaced, to people whose jobs were

-6-

properly abolished (if that is what happened in this case). And, perhaps only by happenstance, the Board on appeal took out the ALJ's footnote clarifying that the <u>Laidlaw</u> remedy applied to all strikers, including the 15 laid off in February 2002, rather than just to those 25 or 26 strikers whose positions Pan American did not claim to have eliminated.

Nowhere in the Board's arguments to this court did the Board say squarely that most of what was being argued on this petition for review as to the 15 employees was moot because of the Board's alternative <u>Laidlaw</u> theory. Yet, to the extent the Board's original order is properly read as applying the <u>Laidlaw</u> theory to the 15 strikers, perhaps Pan American was obliged to attack this alternative theory on the original petition for review. In turn, Pan American can argue with some basis in the record that the Board itself never clearly told the court prior to our decision that it so read its own order.

Our present understanding of the entire <u>Laidlaw</u> matter is pieced together from comments made in the Board's latest filing and in Pan American's reply. The controversy was not briefed on the original petition for review and was never decided by us. Nor, based on the fragments of argument presented post-decision, are we now in a position to decide those issues. Accordingly, we are unwilling at this time to enforce the Board's proposed substitute order on the <u>Laidlaw</u> theory as to these 15 strikers.

At the same time, we conclude that the Board should be free in the remanded proceeding expressly to order Laidlaw relief for the 15 employees if it views that as appropriate and consistent with its prior intentions. Assuming the Board does so and that the issue is not mooted by the Board's "duty to bargain" determinations on remand, the Laidlaw relief including any objections to it that Pan American chooses to make will be available for appellate consideration on future appellate review directed to whatever order is entered in the remanded proceeding. We express no view on this or any other issue that may be considered by the Board on remand.

The Board's motion to vacate our December 2005 judgment and substitute its own version is denied without prejudice to the Board's ability to determine in the remanded proceeding that the Laidlaw remedy should apply to the 15 laid-off employees. Review of any new order entered on remand may be sought in the usual course. But, as review would effectively be a continuation of the present case, our Clerk's Office should assign any new review petition pertaining to the remanded proceeding to the present panel. We vacate our original judgment and reenter it as of today so that each side has an opportunity to seek rehearing and/or rehearing en banc from that judgment as reaffirmed and clarified by today's decision.

It is so ordered.