184 F.3d 889 (D.C. Cir. 1999)
 Georgia State Chapter Association of Civilian Technicians, Petitioner
v.
Federal Labor Relations Authority, Respondent
 No. 98-1452
 United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT
 Argued May 5, 1999
Decided August 3, 1999
 
 On Petition for Review of an Order of the Federal Labor Relations Authority
 Daniel M. Schember argued the cause and filed the briefs for petitioner.
 Judith A. Hagley, Attorney, Federal Labor Relations Authority, argued the cause for respondent. With her on the brief were David M. Smith, Solicitor, and William R. Tobey, Deputy Solicitor.
 Before: Ginsburg, Sentelle, and Randolph, Circuit Judges.
 Opinion for the Court filed by Circuit Judge Randolph.
 Randolph, Circuit Judge:
 
 
 1
 Let us begin very simply. The petitioner has raised several objections to a decision of the Federal Labor Relations Authority. No one made these objections, or any arguments in support of them, during the administrative proceedings. The FLRA's opinion does not address them. Congress, in 5 U.S.C. § 7123(c), decreed: "No objection that has not been urged before the Authority ... shall be considered by the court, unless the failure or neglect to urge the objection is excused because of extraordinary circumstances." The particular "failure or neglect" encountered here cannot be excused. There are no extraordinary circumstances. And so the petition for judicial review must be denied. See EEOC v. FLRA, 476 U.S. 19, 22-23 (1986);NLRB v. Seven-Up Bottling Co. of Miami, 344 U.S. 344, 350 (1953).
 
 
 2
 Now for the details. Petitioner is the Georgia State Chapter of the Association of Civilian Technicians, a federal labor union. It has a collective bargaining agreement with the Office of the Adjutant General, Georgia Department of Defense. Section 5.2a(3) of the agreement gives the union, or rather its members, a total of 2200 hours of paid administrative leave[1]--otherwise known as "official time"--for certain specified purposes, one of which is to visit elected representatives regarding legislation that would affect union members.[2]In August 1995, the union requested hours of official time for eleven of its representatives to meet with Members of Congress to discuss "matters of interest to the Union and the employees it represents." See Georgia State Chapter Ass'n of Civilian Technicians, 54 F.L.R.A. 654, 656 (1998). The Georgia Office of the Adjutant General refused on the basis that the contractual leave provision, to the extent it concerned lobbying of Congress, was unlawful and hence unenforceable. See id.
 
 
 3
 After management reiterated its position, the union filed an unfair labor practice charge. The FLRA's General Counsel issued a complaint alleging that this arm of the Defense Department, by repudiating a provision of the collective bargaining agreement, had violated § 7116(a)(1) and (5) of the Federal Service Labor-Management Relations Act.[3] See Georgia State Chapter, 54 F.L.R.A. at 654. During the ensuing administrative proceedings, the General Counsel contended that § 7102 grants employees the right to act in a representational capacity and, in that capacity, to present the views of their union to Congress.[4] See Georgia State Chapter, 54 F.L.R.A. at 660. The Act also requires that union representatives "be granted official time" in an amount set by contract. See 5 U.S.C. § 7131(d). In an anticipatory defense, the General Counsel maintained that a criminal provision--18 U.S.C. § 1913--did not render the administrative leave provision illegal. The criminal provision forbids using appropriated funds "directly or indirectly to pay for any ... device, intended or designed to influence in any manner a Member of Congress ... [regarding] any legislation or appropriation," "in the absence of express authorization by Congress." 18 U.S.C. § 1913. Section 7102(1), the General Counsel contended, is such an express congressional authorization. See Georgia State Chapter, 54 F.L.R.A. at 660.
 
 
 4
 Although agreeing with the General Counsel about 18 U.S.C. § 1913, the FLRA held the disputed portion of the contractual leave provision unenforceable on another ground. Paying wages to union representatives for their lobbying of Congress, the FLRA ruled, contradicted § 8015 of the Department of Defense Appropriations Act, 1996. See Georgia State Chapter, 54 F.L.R.A. at 665-66; see also Department of Defense Appropriations Act, 1996, Pub. L. No. 104-61, § 8015, 109 Stat. 636, 654 (1995). Section 8015 provides that "[n]one of the funds made available by this Act shall be used in any way, directly or indirectly, to influence congressional action on any legislation or appropriation matters pending before the Congress." See Pub. L. No. 104-61, § 8015, 109 Stat. 654. In so ruling, the FLRA adopted the contention of the Defense Department in the brief it filed with the agency.
 
 
 5
 The union tells us that the FLRA erred, because the Appropriations Act could not repeal the provisions of the Federal Service Labor-Management Relations Act by implication; because the FLRA "overlooked its obligation to reconcile the statutes"; because the FLRA's interpretation raises a question under the First Amendment to the Constitution; and because the labor statute is more specific than the Appropriations Act. We can say with confidence that none of these objections, none of these arguments, was ever urged until the case arrived in this court. As we wrote in the opening paragraph, that failure and neglect precludes us from passing on the union's contentions. We do not have to deal with any possible distinctions between, on the one hand, preserving an "objection"--the term used in 5 U.S.C. § 7123(c), and in its NLRB counterpart, 29 U.S.C. § 160(e)-and, on the other hand, preserving an "issue," or a "claim," or an "argument." Compare Seven-Up Bottling Co. of Miami, 344 U.S. at 350; Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991); Yee v. City of Escondido, 503 U.S. 519, 534-35 (1992); Parsippany Hotel Management Co. v. NLRB, 99 F.3d 413, 417-18 (D.C. Cir. 1996). The fact of the matter is that nothing was put before the FLRA to counter the Defense Department's contention that the Appropriations Act rendered the contractual provision unenforceable. It is not enough that the FLRA's General Counsel brought to the agency's attention the maxim that a specific statute prevails over a general one. This was said to explain why the criminal provision (18 U.S.C. § 1913) did not override the provisions in the Federal Service Labor-Management Relations Act. See Georgia State Chapter, 54 F.L.R.A. at 660. Whether the maxim should be applied to the Appropriations Act is another question entirely, and one on which the General Counsel was silent. See, e.g., United States Dep't of Commerce v. FLRA, 7 F.3d 243, 245 (D.C. Cir. 1993).
 
 
 6
 Section 7123(c) permits us to pass on an objection even though it has not been urged before the FLRA if "extraordinary circumstances" warrant excusing the failure. The union points out that the FLRA requires simultaneous briefing. See 5 C.F.R. § 2429.1(a) (1997), removed and reserved, Unfair Labor Practice Proceedings: Miscellaneous and General Requirements, 62 Fed. Reg. 40,911, 40,922 (July 31, 1997). The Defense Department's arguments regarding the 1996 Appropriations Act, the union tells us, were unanticipated. Be that as it may, leave to file a reply brief setting forth the arguments in opposition was never sought. See 5 C.F.R. § 2429.26(a); see Garment Workers v. Quality Mfg. Co., 420 U.S. 276, 281 n.3 (1975); NLRB v. FLRA, 2 F.3d 1190, 1195 (D.C. Cir. 1993). Nor did the union request reconsideration of the FLRA's decision. See 5 C.F.R. § 2429.17.
 
 
 7
 It is true that we have considered and ruled on objections first raised on judicial review when the FLRA rested its decision on a ground neither party had argued, so long as a request for reconsideration appeared clearly doomed. See United States Dep't of Commerce, 7 F.3d at 245; United States Dep't of Interior v. FLRA, 969 F.2d 1158, 1161 (D.C. Cir. 1992). The situation here is not comparable. In the first place, the FLRA did not sua sponte raise the Appropriations Act; the Defense Department argued the point to the agency.
 
 
 8
 Second, it is not so plain that a request for reconsideration would have been futile. Shortly before issuing its opinion in this case, the FLRA handed down two decisions--Office of the Adjutant General, New Hampshire National Guard, 54 F.L.R.A. 301, 310-11 (1998), and Headquarters, National Guard Bureau Washington, D.C. Nevada Air National Guard, Reno, Nevada, 54 F.L.R.A. 316, 325 (1998). The union describes these cases as identical to its case, and states that in both, the FLRA rejected the arguments the union wishes us to consider. But the factual setting of those cases was not the same as this one and, in any event, the FLRA's opinions do not even deal with several of the arguments contained in the union's brief in this court. We have no doubt that these precedents would have put the union in the position of waging an uphill battle in getting the FLRA to reconsider, but "the requirement that a litigant present such a petition is ordinarily not excused simply 'because the [FLRA] was unlikely to have granted it.' " Compare NLRB v. FLRA, 2 F.3d at 1196.
 
 
 9
 The petition for review is denied.
 
 
 
 Notes:
 
 
 [1]
 Administrative leave is "time granted an employee by an agency to perform representational functions" and is considered hours of work. See 5 C.F.R. § 551.424(b).
 
 
 [2]
 Section 5.2a states: "The Labor Organization is authorized two thousand two hundred (2200) hours of administrative leave for the following purposes: ... (3) Represent Technicians by visiting elected representatives in support or opposition to pending or desired legislation which would impact the working conditions of Technicians represented by [the Association of Civilian Technicians]."
 
 
 [3]
 5 U.S.C. § 7116(a) provides that "it shall be an unfair labor practice for an agency--(1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter; ... (5) to refuse to consult or negotiate in good faith with a labor organization as required by this chapter."
 
 
 [4]
 5 U.S.C. § 7102(1) states that employees shall have the right to form, join or assist any labor organization and that "such right includes the right--to act for a labor organization in the capacity of a representative and the right, in that capacity, to present the views of the labor organization to heads of agencies and other officials of the executive branch of the Government, the Congress, or other appropriate authorities."