# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 16, 2007      Decided February 8, 2008

No. 06-1365

W&M PROPERTIES OF CONNECTICUT, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with
06-1395

———

On Petition for Review and Cross-Application for
Enforcement
of an Order of the National Labor Relations Board

———

*Peter D. Stergios* argued the cause for petitioner. With him on the briefs was *Patrick M. Collins*.

*Jeffrey J. Barham*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Ronald E. Meisburg*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Assistant General Counsel, and *Julie B. Broido*, Senior Attorney.

2

Before: BROWN and GRIFFITH, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: In this case, the National Labor Relations Board determined that an employer's decision not to retain employees of a newly acquired business was unlawfully animated by a desire to avoid dealing with a labor union, in violation of the National Labor Relations Act. Because the Board's order is a product of reasoned decisionmaking and is supported by substantial evidence in the record, we deny the employer's petition for review and grant the Board's cross-application for enforcement.

**I.**

W&M Properties of Connecticut, Inc. ("W&M") is a real estate management and marketing firm. In 2001, W&M expanded its portfolio of managed commercial properties by purchasing from TrizecHahn Corporation an 800,000-square-foot office complex called First Stamford Place. Prior to W&M's purchase, maintenance at First Stamford Place had been provided by a seven-person engineering staff employed by TrizecHahn. These TrizecHahn engineers were union members, having elected as their representative the International Union of Operating Engineers, Local 30, AFL-CIO ("Local 30").

Beginning in September 2000, W&M conducted due diligence to determine what improvements would be necessary to bring the property up to its standards. After touring First Stamford Place and settling upon a staffing model, W&M Senior Vice President Richard Heller conducted a series of job interviews to hire the necessary

engineers. TrizecHahn employees participated in this process, as did outside applicants. The union membership of the TrizecHahn engineers did not go unnoticed. One W&M interviewer made clear to a job applicant that First Stamford Place would not have a unionized workforce, and several TrizecHahn employees were questioned about their union membership.

W&M offered jobs to two of the TrizecHahn engineers, Hector Benitez and Omar Perez, but not to the others, Liam McGoohan, Stephen Bonos, Richard Stofko, Henry Cassidy, and Paul Schmitt. Benitez accepted the offer and Perez declined. W&M filled the remaining positions with four outside applicants and one employee transferred from another W&M property, for a total of six engineers. The reconstituted engineering staff of First Stamford Place lacked a majority of union workers, with Benitez as the lone union member. As a result, W&M refused to bargain with Local 30 and made certain unilateral changes to the working environment at First Stamford Place.

Local 30 filed a charge with the National Labor Relations Board ("Board"), alleging violations of the National Labor Relations Act ("NLRA").[1] An administrative law judge was assigned to determine whether W&M had violated § 8(a)(1), § 8(a)(3), or § 8(a)(5) of the NLRA by interfering with the employees' right to unionize, failing to hire the union employees, and refusing to bargain with the union. W&M argued that its refusal to hire McGoohan, Bonos, Stofko, and Cassidy was motivated by its determination, on the basis of subjective and objective evaluations, that those engineers

---

[1] The General Counsel's complaint did not name Schmitt as a victim of anti-union discrimination, so W&M's refusal to hire him is not at issue in this case.

were unsuitable for the task of maintaining First Stamford Place according to W&M's standards.

The administrative law judge ruled against W&M, finding that anti-union animus motivated its hiring decisions. W&M filed exceptions. The Board adopted most of the administrative law judge's findings in an order dated September 20, 2006. As a remedy, the Board ordered W&M to bargain with Local 30, hire and make whole McGoohan, Bonos, Stofko, and Cassidy, and make whole other employees aggrieved by the unilateral changes to working conditions at First Stamford Place. W&M did not file a motion for reconsideration with the Board, opting instead to go straight to court. W&M petitions for review of the Board's order and the Board cross-applies for enforcement of its order.

## II.

Before discussing the merits of W&M's petition, we must first address a jurisdictional bar to our consideration of one of its arguments. Section 10 of the NLRA, which creates and limits our jurisdiction to review the Board's orders, provides: "No objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e); *see also id.* § 160(f) (incorporating subsection (e)'s jurisdictional constraint). We are therefore powerless, in the absence of "extraordinary circumstances," to consider arguments not made to the Board.

W&M claims for the first time in its opening brief that the Board's chosen remedy was unlawfully punitive. This argument was not made to the Board and so comes too late. *See Quazite Div. of Morrison Molded Fiberglass Co. v.*

*NLRB*, 87 F.3d 493, 497 (D.C. Cir. 1996). If aggrieved by the Board's remedy, W&M should have filed a motion for reconsideration pursuant to the Board's rules and regulations. *See, e.g.*, *Int'l Ladies' Garment Workers' Union v. Quality Mfg. Co.*, 420 U.S. 276, 281 n.3 (1975); *United Food & Commercial Workers Union Local 204 v. NLRB*, 506 F.3d 1078, 1087 (D.C. Cir. 2007); *Cobb Mech. Contractors v. NLRB*, 295 F.3d 1370, 1377–78 (D.C. Cir. 2002); *Epilepsy Found. of Ne. Ohio v. NLRB*, 268 F.3d 1095, 1101–02 (D.C. Cir. 2001); *Glaziers' Local No. 558 v. NLRB*, 408 F.2d 197, 202–03 (D.C. Cir. 1969); *see also* 29 C.F.R. § 102.48(d)(1) (establishing procedures for motions for reconsideration). Such a motion would have given the Board notice of W&M's objection, *Local 900, Int'l Union of Elec., Radio & Mach. Workers v. NLRB*, 727 F.2d 1184, 1192 & n.8 (D.C. Cir. 1984), and an opportunity to fix its supposed mistake, *see Elastic Stop Nut Div. of Harvard Indus. v. NLRB*, 921 F.2d 1275, 1284 (D.C. Cir. 1990). "[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952).

By failing to file a motion for reconsideration, W&M waived its challenge to the Board's remedy and deprived us of jurisdiction to consider it. *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665–66 (1982). Contrary to W&M's suggestion, there are no "extraordinary circumstances" excusing this error under § 10 of the NLRA. W&M argues that its failure to file should be forgiven because a motion for reconsideration would have been futile in light of the new remedial framework announced in *Planned Building Services, Inc.*, 347 N.L.R.B. No. 64, 2006 WL 2206975 (2006). W&M relies on *NLRB v. FLRA*, a case in which we entertained an

argument that had not been urged before the Federal Labor Relations Authority ("Authority") by taking a rather broad view of "extraordinary circumstances" in the waiver provision of the Federal Labor Relations Act. *See* 2 F.3d 1190, 1195–96 (D.C. Cir. 1993) (per curiam) (construing 5 U.S.C. § 7123(c)). W&M's argument under *NLRB v. FLRA* fails.

The "extraordinary circumstances" we found in *NLRB v. FLRA* consisted of the "patent futility" of filing a motion for reconsideration in that case. *Id.* at 1196. The petitioner in *NLRB v. FLRA* established patent futility by pointing to instances in which the agency had already rejected its contested argument in other proceedings. *See id.* By contrast, W&M offers nothing but its own forecast regarding how the Board might view its argument in light of the recently decided adverse precedent in *Planned Building*. W&M claims that, "[g]iven the Board's fanfare in unveiling [a new remedial standard] just seven weeks before the decision under review here, it is manifestly clear it would have been a useless exercise for W&M to seek reconsideration by the Board in this case." Reply Br. at 11. Such an assessment of the Board's likely disposition, relying on highly subjective indicia such as "the Board's fanfare," is insufficient to prove patent futility because it does not show that a motion for reconsideration was "clearly doomed" by the agency's rejection of identical arguments. *See Ga. State Chapter Ass'n of Civilian Technicians v. FLRA*, 184 F.3d 889, 892 (D.C. Cir. 1999). As we have noted, "the requirement that a litigant present such a petition is ordinarily not excused simply because the [agency] was unlikely to have granted it." *Id.* (citation and internal quotation marks omitted). Given W&M's failure to urge its remedial challenge before the Board and its inability to establish "extraordinary circumstances" justifying this mistake, we conclude that the argument is waived and that we therefore lack jurisdiction to consider it.

**III.**

Turning to the merits that we may properly consider, W&M levels two charges against the Board's order: *first*, that the Board impermissibly departed from precedent in analyzing the decision not to hire TrizecHahn's union member employees; and *second*, that the findings of labor violations lack the support of substantial evidence in the record. "We will set aside the Board's decision only if the Board 'acted arbitrarily or otherwise erred in applying established law to the facts at issue, or if its findings are not supported by substantial evidence.' " *Waterbury Hotel Mgmt., LLC v. NLRB*, 314 F.3d 645, 650 (D.C. Cir. 2003) (quoting *Plumbers & Pipe Fitters Local Union No. 32 v. NLRB*, 50 F.3d 29, 32 (D.C. Cir. 1995)). Applying this deferential standard of review, we find no fault with the Board's decision.

*Departure From Precedent*

The Board is not at liberty to ignore its prior decisions, *LeMoyne-Owen College v. NLRB*, 357 F.3d 55, 60–61 (D.C. Cir. 2004), but must instead provide a reasoned justification for departing from precedent, *Titanium Metals Corp. v. NLRB*, 392 F.3d 439, 446 (D.C. Cir. 2004). As we explained in *Greater Boston Television Corp. v. FCC*, "an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored, and if an agency glosses over or swerves from prior precedents without discussion it may cross the line from tolerably terse to intolerably mute." 444 F.2d 841, 852 (D.C. Cir. 1970) (footnotes omitted). In *Planned Building Services, Inc.*, 347 N.L.R.B. No. 64, slip op. at 4–5 (2006), the Board departed

from precedent regarding the standard used to evaluate failure-to-hire claims in the successorship context. W&M challenges the Board's application of the new *Planned Building* standard to the facts of this case, arguing that the Board should have retained the old standard from *FES (Div. of Thermo Power)*, 331 N.L.R.B. 9 (2000), *enforced*, 301 F.3d 83 (3d Cir. 2002). Because the Board provided a reasoned justification for its partial abandonment of *FES* in *Planned Building*, we will not upset its new standard.

To trace the development of the failure-to-hire standard as it applies to this successorship case, we begin with the Board's analysis of discriminatory-firing claims in *Wright Line*, 251 N.L.R.B. 1083 (1980), *enforced*, 662 F.2d 899 (1st Cir. 1981). Under *Wright Line*, if the General Counsel proves that protected union conduct was a motivating factor in the employer's decision to terminate an employee, the burden shifts to the employer, who must prove that it would have made the same decision regardless of the union conduct. *See Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 277–78 (1994); *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 399–403 (1983) (citing *Wright Line*). In *FES*, the Board adapted the *Wright Line* standard to the failure-to-hire context by adding two items to the General Counsel's initial burden of proof: that the employer was hiring, and that the unhired applicant had relevant experience or training for the job. *See FES*, 331 N.L.R.B. at 12–13. This change ensured that employers would only have to guard against the discrimination claims of qualified job applicants.

The *FES* addendum to the *Wright Line* formula made sense for most failure-to-hire claims, but not for the subset of cases involving successor employers. In applying *FES* to successorship cases, the Board came to see the pointlessness of establishing that an employee was qualified to hold the

same job he had performed for the predecessor employer. *Planned Building* acted on this realization by removing the *FES* burden from successor's-failure-to-hire cases, in essence treating the decision not to hire a predecessor's employee as it would a firing. *See Planned Building*, slip op. at 4–5.

The Board provided a sound rationale for this change, explaining that elimination of the *FES* burden in the successorship context promotes efficiency by removing an extraneous analytical step. *See id.* at 4 ("[I]t serves no purpose to require the General Counsel to demonstrate, in each successorship case, that the employees have relevant experience or training for essentially the same jobs in the successor's work force that they performed in the predecessor's work force."). The *FES* elements of job availability and applicant qualification are presumptively satisfied in a successorship case, so the inquiry reverts to the *Wright Line* analysis. *See id.*

W&M challenges the Board's rationale by attacking a *Planned Building* straw man. W&M argues that the presumption that a predecessor's employees are qualified to work for a successor prevents a successor from choosing its own personnel policies. This contention mistakenly assumes that the presumption of qualification is irrebuttable. A successor employer is well-positioned to explain to the Board how its employment expectations differ from those of its predecessor. Nothing in *Planned Building* prevents a successor employer from making this point.

By providing a reasoned justification for its departure from precedent, the Board avoided a finding of arbitrary and capricious action under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). *See Titanium Metals Corp. v. NLRB*, 392 F.3d 439, 446 (D.C. Cir. 2004).

*Labor Violations*

The Board found that W&M violated the NLRA by interfering with the employees' right to unionize, declining to hire its predecessor's employees because of their union membership, and refusing to bargain with the union. *See* 29 U.S.C. § 158(a)(1), (3), (5) (proscribing such conduct). We review the Board's order to determine whether it enjoys the support of substantial evidence in the record. *Waterbury Hotel Mgmt., LLC v. NLRB*, 314 F.3d 645, 650 (D.C. Cir. 2003). Our review of the Board's factual conclusions is "highly deferential," *Capital Cleaning Contractors, Inc. v. NLRB*, 147 F.3d 999, 1004 (D.C. Cir. 1998), for we must treat the Board's findings of fact as "conclusive" if supported by substantial evidence, 29 U.S.C § 160(e). We will not disturb the Board's "reasonably defensible" interpretation of the facts, *Traction Wholesale Ctr. Co. v. NLRB*, 216 F.3d 92, 99 (D.C. Cir. 2000), regardless whether we might rule differently de novo, *Evergreen Am. Corp. v. NLRB*, 362 F.3d 827, 837 (D.C. Cir. 2004). Greater still is the deference due a credibility determination or a finding regarding motive. *See Capital Cleaning*, 147 F.3d at 1004.

W&M challenges the finding that it unlawfully interrogated Perez about his union membership. Coercive interrogation of this sort violates § 8(a)(1) of the NLRA, which makes it an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise of" their right to unionize. 29 U.S.C. § 158(a)(1). The standard for unlawful interrogation is whether an employer's questions about union membership "reasonably tended to interfere with, restrain, or coerce." *Facchina Constr. Co.*, 343 N.L.R.B. 886, 886 (2004), *enforced mem.*, 180 Fed. Appx. 178 (D.C. Cir. 2006). The Board, after properly examining the "totality of the

circumstances," *Vincent Indus. Plastics, Inc. v. NLRB*, 209 F.3d 727, 737 (D.C. Cir. 2000), found that Heller's coercive questioning of Perez violated § 8(a)(1) of the NLRA. Substantial evidence supports this conclusion. Testifying before the administrative law judge, Perez described the following interaction:

> [Q:] Okay. Anything else you recall being discussed in that meeting with Mr. Heller?
> [A:] Yes. He asked me, you know, like — he also asked me how long I was a member of Local 30.
> [Q:] And what did you tell him?
> [A:] I told him for almost eight years. You know, he also asked me, you know, like, if I was to get laid off, like, if the Union would get me another job.

Questions about union membership have a tendency to coerce. *See Allegheny Ludlum Corp. v. NLRB*, 104 F.3d 1354, 1359 (D.C. Cir. 1997). This is especially so where the questioning occurs behind closed doors and is initiated by a company official, as it was in this case. *See Timsco Inc. v. NLRB*, 819 F.2d 1173, 1178 (D.C. Cir. 1987); *Perdue Farms, Inc., Cookin' Good Div. v. NLRB*, 144 F.3d 830, 835–36 (D.C. Cir. 1998). A reasonable jury viewing this record could have found W&M's questioning to violate § 8(a)(1) of the NLRA, so we conclude that substantial evidence supports the Board's finding to that effect. *See Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 366–67 (1998).

W&M also challenges the finding that it discriminatorily refused to hire TrizecHahn's unionized employees, in violation of § 8(a)(3) of the NLRA, 29 U.S.C. § 158(a)(3). The Board's finding to this effect is built upon two propositions, each of which finds support in the record. First is the proposition that W&M harbored anti-union animus

against the TrizecHahn engineers. Gerrit Blauvelt, W&M's Director of Property Management, told one job applicant that W&M would never recognize Local 30 because the owners did not want a unionized workforce at First Stamford Place, and told another that "if anyone was going to work for W&M that it would have to be non-Union." The second proposition is that W&M's excuse for not hiring the TrizecHahn engineers was a pretext for anti-union animus. W&M claimed that its decision not to hire McGoohan, Bonos, Stofko, and Cassidy was based on its walking tours, which showed First Stamford Place to be in disrepair; on its neutral and objective hiring criteria; and on its interviews, which revealed certain employees to be unsatisfactory. The Board reasonably discredited the disrepair argument because W&M made no effort to attribute the problems found to the employees not hired, and in fact showed an interest in hiring Joe Morra despite his responsibility, as Property Manager, for the poor condition of First Stamford Place. The Board inferred from the hiring of Benitez and outside applicant Adalberto Sotillo, both of whom lacked relevant experience, and from the failure to hire more qualified and better trained employees, that W&M's alleged criteria were illusory. Finally, the Board discredited W&M officials' claims that subjective but neutral observations from the interviews supported the decision not to hire. Substantial evidence supports the finding of a violation of § 8(a)(3) of the NLRA because, taken together, these items from the record are enough to persuade a reasonable jury that protected union conduct was a motivating factor in W&M's decisionmaking process, and that it failed to establish an affirmative defense under *Wright Line* and *Planned Building*. *See Allentown Mack*, 522 U.S. at 366–67.

Finally, the Board found that W&M's objection to the administrative law judge's conclusion on the § 8(a)(5) refusal-to-bargain charge depended on its contention that the

§ 8(a)(3) finding was erroneous. Having properly rejected W&M's challenges to the § 8(a)(3) finding, the Board reasonably found no merit in W&M's exceptions to the administrative law judge's findings on the § 8(a)(5) charge.

## IV.

For the reasons set forth in this opinion, we deny W&M's petition for review and grant the Board's cross-application to enforce its order.

*So ordered.*