Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 12, 2011         Decided May 27, 2011

No. 10-1299

UNITED STATES DEPARTMENT OF THE AIR FORCE, 4TH FIGHTER WING, SEYMOUR JOHNSON AIR FORCE BASE, PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY, RESPONDENT

On Petition for Review of an Order
of the Federal Labor Relations Authority

*Robert D. Kamenshine*, Attorney, U.S. Department of Justice, argued the cause for petitioner.  With him on the briefs were *Tony West*, Assistant Attorney General, and *William Kanter*, Attorney.

*Joyce G. Friedman*, Attorney, Federal Labor Relations Authority, argued the cause for respondent.  With her on the brief was *Rosa M. Koppel*, Solicitor.

Before: ROGERS, GRIFFITH and KAVANAUGH, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The Air Force petitions for review of the decision and order of the Federal Labor Relations Authority ("FLRA") that a union proposal for uniform cleaning is a negotiable condition of employment. Reversing its position before the FLRA, the Air Force contends that the proposal is non-negotiable because it would require the use of appropriated funds for a purpose not authorized by law. Section 1593 of title 10 of the U.S. Code authorizes certain appropriated funds to be used "for uniforms . . . or for allowance for uniforms," whereby the Air Force may either "pay an allowance" to employees required by law "to wear a prescribed uniform" or, "[i]n lieu of providing an allowance . . . [,] provide a uniform" to employees. *See also* 5 U.S.C. § 5901(a). Based on a recently discovered Conference Report, the Air Force contends that neither alternative authorizes the expenditure of funds for the provision of services related to uniforms and statutory silence does not leave it discretion to do so. The FLRA, invoking the waiver provision, 5 U.S.C. § 7123(c), contends the court lacks jurisdiction to entertain the petition because the Air Force failed to present its new interpretation of the uniform statutes below.

We hold that the Air Force's belated discovery of a constitutional appropriations bar, *see* U.S. CONST. art. I, § 9, cl. 7, is an "extraordinary circumstance[]" under section 7123(c) that permits consideration of an argument not presented to the FLRA. Were the exception not to apply, the FLRA's order would, in effect, permit the Air Force, by contract with the Union, to authorize the expenditure of funds beyond what Congress has approved. Having jurisdiction, we grant the petition. Whether because the plain text of the uniform statutes

does not authorize use of funds for cleaning uniforms, or because the statutory silence creates ambiguity and the FLRA must defer to the permissible interpretation of 10 U.S.C. § 1593 by the Department of Defense, which administers the statute, the Air Force has no duty to bargain over uniform cleaning services.

## I.

As of August 2007, the Air Force requires its Air Reserve Technicians, who are citizen-employees required as a condition of their employment to maintain membership in a military reserve unit, to "wear the military uniform while performing civilian duties." Air Force Instruction 36-801 § 1.1.1.9 (Apr. 29, 1994) (incorporating change Aug. 6, 2007). The National Association of Independent Labor, Local 7 ("the Union"), challenged the "compelling need" for the uniform requirement, *see* 5 U.S.C. § 7117; 5 C.F.R. § 2424.50, and alternatively proposed as a subject for negotiation that the Air Force provide uniform cleaning services.

The Air Force claimed it had no duty to bargain over uniform maintenance because "[t]his matter is specifically provided for by federal statute and therefore is not a condition of employment under 5 U.S.C. [§] 7103(a)(14)." Decl. of Negotiability 2 (Feb. 3, 2010). In its view, "5 U.S.C. § 5901 addresse[d] the payment of a uniform allowance for the maintenance of the uniform." *Id.* When the Union filed a petition for a review of negotiability issues with the FLRA, *see* 5 C.F.R. § 2424.22, the Air Force responded to the same effect, stating that the uniform maintenance proposal was non-negotiable because under FLRA precedents uniform cleaning expenses were expressly provided for in 10 U.S.C. § 1593 and thus fell outside the duty to bargain. Alternatively, it argued that the proposal was inconsistent with 10 U.S.C. § 1593, which authorized the Air Force either to furnish a uniform *or* to

provide a uniform allowance, but not to "pay a uniform allowance [and] also to furnish uniforms in the form of cleaning services to those employees who also receive a uniform allowance." Air Force Statement of Position 13–14 (Mar. 23, 2010). The Union responded by pointing to more recent FLRA precedents as supporting the negotiability of the uniform cleaning proposal.

The FLRA agreed with the Union, ruling the Air Force had not established that the uniform statutes left it no discretion to bargain where the uniform cleaning proposal would not require it to exceed the dollar amount of the uniform allowance, and further that the proposal was not inconsistent with the uniform statutes because providing cleaning services was not the equivalent of furnishing a uniform. *See Nat'l Ass'n of Indep. Labor Local 7*, 64 F.L.R.A. 1194, 1199–1200 (2010). The Air Force petitions for review.

## II.

Under 5 U.S.C. § 7123(c), "[n]o objection that has not been urged before the Authority . . . shall be considered by the court, unless the failure or neglect to urge the objection is excused because of extraordinary circumstances." The petition for review by the Air Force presents a new interpretation of the uniform statutes, 10 U.S.C. § 1593; 5 U.S.C. § 5901, based on a belatedly discovered Conference Report that, in its view, precludes payment for cleaning services. Unless the Air Force's petition falls within the "extraordinary circumstances" exception to the waiver provision, then, the court must dismiss the petition for lack of jurisdiction.

The court, recognizing its jurisdiction normally does not extend to an "objection that has not been urged before the Authority," *Am. Fed'n of State, Cnty. & Mun. Emps. Capital*

*Area Council 26 v. FLRA*, 395 F.3d 443, 451–52 (D.C. Cir. 2005) (citation and quotation marks omitted), has interpreted the "extraordinary circumstances" exception narrowly. The Supreme Court held that the "plain language [of section 7123(c)] evinces an intent that the FLRA shall pass upon issues arising under [Title VII of the Civil Service Reform Act of 1978, known as the Federal Service Labor-Management Relations Act, 5 U.S.C. § 7101 *et seq.*[1]], thereby bringing its expertise to bear on the resolution of those issues." *EEOC v. FLRA*, 476 U.S. 19, 23 (1986) (per curiam). In that case, the Court concluded it lacked jurisdiction to decide the question of negotiability because the principal arguments advanced by the EEOC against negotiability were not presented to the FLRA, and there was no extraordinary circumstance to excuse the omission. *Id.* at 23–24.[2] "[T]he Court so held despite the fact that, had EEOC's contentions been correct, the FLRA decision would have undercut congressional policy." *U.S. Dep't of Hous. & Urban Dev. v. FLRA*, 964 F.2d 1, 4 (D.C. Cir. 1992). Accordingly, this court concluded that it is not enough that the FLRA's order would arguably circumvent this court's precedent or even a congressional preference with regard to a class of employees. *See id.* at 3–4. Instead, in an exemplary circumstance, the court has applied the "extraordinary circumstances" exception to reach arguments not presented to the FLRA where they "simply track the objections considered by the [FLRA]" in another case. *U.S. Dep't of Interior Minerals Mgmt. Serv. v. FLRA*, 969 F.2d 1158, 1161 (D.C. Cir. 1992). In other words, a failure to present

---

[1] *See Dep't of Health & Human Servs. Family Support Admin. v. FLRA*, 920 F.2d 45, 47 (D.C. Cir. 1990).

[2] The Court also noted that the EEOC's failure to present its objections to the Court of Appeals provided further justification for dismissing the writ of certiorari as improvidently granted. *See EEOC*, 476 U.S. at 24.

arguments to the FLRA was excused because the court enjoyed the benefit of the FLRA's expertise in addressing the same arguments in another case and "a rehearing petition would have been futile given that the Authority had just found an identical proposal negotiable." *Id*.

The Air Force suggests that FLRA precedent gave it "ample reason" to conclude that presenting its new argument to the FLRA would have been futile. Reply Br. 10. It points to *National Association of Government Employees, SEIU, AFL-CIO*, 26 F.L.R.A. 515, 526 (1987), where the FLRA, based on an examination of the uniform statutes and Senate Report No. 83-1992 (1954), *reprinted in* 1954 U.S.C.C.A.N. 3816, 3826, concluded that 5 U.S.C. chapter 59, subchapter I (where section 5901 is found) "deals comprehensively with the payment of a uniform allowance by an agency for the maintenance of the uniform which the agency requires employees to wear." *See also Ass'n of Civilian Technicians, Wisconsin Chapter*, 26 F.L.R.A. 682, 684 (1987). Subsequent FLRA decisions addressing uniform maintenance proposals emphasized and relied almost exclusively on the Senate Report in ruling that "the legislative scheme encompassed both the purchase and upkeep of the uniforms." *See, e.g.*, *Nat'l Treasury Emps. Union*, 46 F.L.R.A. 696, 776–77 (1992).

The difficulty with the Air Force's futility argument is two-fold. First, the legislative history objections now presented do not "simply track the objections considered by the Authority" in another case. *U.S. Dep't of Interior*, 969 F.2d at 1161. Second, the Air Force presumes that the FLRA, having relied on legislative history in the past, would have resisted considering legislative history not previously addressed in an opinion. The futility exception does not reach that far. *See Ga. State Chapter Ass'n of Civilian Technicians v. FLRA*, 184 F.3d 889, 892 (D.C. Cir. 1999); *cf. W & M Props. of Conn., Inc. v. NLRB*, 514 F.3d

1341, 1346 (D.C. Cir. 2008). Particularly in the instant case, by the mid-1990s the FLRA had modified its approach to determining the negotiability of proposals, "clarif[ying] . . . that the comprehensiveness of a statutory scheme is not, in itself, a sufficient basis to find a matter outside the duty to bargain" and focusing instead on "whether the statute at issue provides the Agency the discretion to agree to the proposal." *Nat'l Fed'n of Fed. Emps., Local 1669*, 55 F.L.R.A. 63, 67 (1999). Consequently, the FLRA held the decisions upon which the Air Force relies in making its futility argument to be "superseded by, and inconsistent with," the new methodology insofar as the decisions "suggest that the comprehensive nature of [the uniform statute]" – a conclusion previously supported by Senate Report No. 83-1992, *see, e.g., SEIU*, 26 F.L.R.A. at 526 – "by itself . . . foreclose[d] any bargaining on the subject of uniform allowances." *Nat'l Fed'n of Fed. Emps., Local 1669*, 55 F.L.R.A. at 67.

The belated discovery of a statutory provision, and presumably no less legislative history, would normally be insufficient to fall within the waiver exception. *See U.S. Dep't of the Air Force, Griffiss Air Force Base v. FLRA*, 949 F.2d 1169, 1175 (D.C. Cir. 1991); *see also Marine Mammal Conservancy, Inc. v. Dep't of Agric.*, 134 F.3d 409, 414 (D.C. Cir. 1998). Nonetheless, we conclude that the Air Force's petition presents an "extraordinary circumstance[]" under section 7123(c) for another reason. The Air Force maintains, in view of the belated discovery of the Conference Report, that the uniform statutes it administers do not authorize use of appropriated funds to clean uniforms. Its new interpretation thus implicates the Constitution's Appropriations Clause, which provides that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. CONST. art. I, § 9, cl. 7; *see also* 31 U.S.C. § 1301(a); *Ass'n of Civilian Technicians, Puerto Rico Army Chapter v. FLRA*, 370 F.3d

1214, 1217 (D.C. Cir. 2004) ("*ACT II*"). In *Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990), the Supreme Court rejected an estoppel claim for payment of disability benefits, holding that the Appropriations Clause dictated that "judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized." *Id*. at 426. The Court pointed to the underlying separation of powers concerns: "If agents of the Executive were able, by their unauthorized oral or written statements to citizens, to obligate the Treasury for the payment of funds, the control over public funds that the Clause reposes in Congress in effect could be transferred to the Executive." *Id*. at 428; *cf. Schism v. United States*, 316 F.3d 1259, 1274–75 (Fed. Cir. 2002) (en banc). Similarly, in *Department of the Army v. FLRA*, 56 F.3d 273, 275 (D.C. Cir. 1995), this court declined to apply section 7123(c)'s waiver provision where the petition was based on sovereign immunity, reasoning that if section 7123(c) could bar a belated claim "a federal official could effectively waive sovereign immunity and confer jurisdiction upon the court without an express authorization from the Congress."

The Air Force's petition presents the same concerns identified in *Richmond*: were the "extraordinary circumstances" exception not to apply, the FLRA's order would, in effect, permit the Air Force, by contract with the Union, to authorize the expenditure of funds beyond what Congress has approved, *see* 496 U.S. at 426, implicating separation of powers concerns, *see id.* at 428. This follows because, contrary to the FLRA's response to the petition for review, either the plain text of the uniform statutes dictates this result or the Air Force's interpretation of any statutory ambiguity is entitled to deference. *Cf. Gen. Servs. Admin. v. FLRA*, 86 F.3d 1185, 1187 (D.C. Cir. 1996). Although this touches on the merits, doing so is necessary in order to determine whether the Air Force's invocation of a constitutional appropriations bar presents a

substantial objection to which the waiver exception should apply. Otherwise the exception Congress provided for "extraordinary circumstances" would sweep too broadly, encompassing even frivolous Appropriations Clause challenges. This is how the court has previously ensured itself of the merits of a claim of "extraordinary circumstances." *See Dep't of the Army*, 56 F.3d at 275. There is no issue of the FLRA's expertise. Rather, as the Air Force suggests, "[w]aiver is not a constitutionally valid basis on which to compel the Air Force to spend funds for a purpose unauthorized by Congress." Reply Br. 7 (capitalization omitted). Section 7123(c), rooted in concerns of agency autonomy and judicial efficiency, *cf. Woodford v. Ngo*, 548 U.S. 81, 89 (2006); *NLRB v. Saint-Gobain Abrasives, Inc.*, 426 F.3d 455, 458–59 (1st Cir. 2005), cannot create that authorization. Because the Air Force's belated discovery of a constitutional appropriations bar is an "extraordinary circumstance[]" under section 7123(c), the court has jurisdiction to consider the Air Force's petition, to which we now turn.

## III.

For purposes of identifying our standard of review, the court has differentiated between the FLRA's interpretations of its organic statute and interpretations of a non-organic statute, where both are at issue. *See, e.g., Ass'n of Civilian Technicians, Tony Kempenich Mem'l Chapter 21 v. FLRA*, 269 F.3d 1119, 1121 (D.C. Cir. 2001). The court has held that it "owe[s] no deference to the FLRA's statutory interpretation where it has endeavored to 'reconcile its organic statute . . . with a[nother] statute . . . not within its area of expertise.'" *U.S. Dep't of Veterans Affairs v. FLRA*, 9 F.3d 123, 126 (D.C. Cir. 1993) (second alteration in original) (citation omitted). Here, the Air Force does not challenge the FLRA's interpretation of its organic statute and thus presents no occasion to afford the FLRA

deference; the Air Force does not contest the FLRA's methodology of determining when a bargaining proposal is "specifically provided for by Federal statute," 5 U.S.C. § 7103(a)(14), *viz.*, "whether the statute at issue provides the Agency the discretion to agree to the proposal," *Nat'l Fed'n of Fed. Emps., Local 1669*, 55 F.L.R.A. at 67. Instead, the Air Force challenges the FLRA's failure to defer to its interpretation of 10 U.S.C. § 1593 and 5 U.S.C. § 5901, which are not administered by the FLRA. The court reviews *de novo* the FLRA's interpretation of a statute it is not charged with administering. *See, e.g., Tony Kempenich Mem'l*, 269 F.3d at 1121.

As noted, 10 U.S.C. § 1593 and 5 U.S.C. § 5901 relate to the provision of uniforms in that they authorize the expenditure of appropriated funds for either a uniform or "in lieu [there]of" a uniform allowance.[3] Section 1593 is specific to the Armed

---

[3] Section 1593 provides, in relevant part:

(a) Allowance authorized. –
    (1) The Secretary of Defense may pay an allowance to each civilian employee of the Department of Defense who is required by law or regulation to wear a prescribed uniform in the performance of official duties.
    (2) In lieu of providing an allowance under paragraph (1), the Secretary may provide a uniform to a civilian employee . . . .

\* \* \*

(d) Use of appropriated funds for allowance. – Amounts appropriated annually to the Department of Defense for the pay of civilian employees may be used for uniforms, or for allowance for uniforms, as authorized by this section and

Forces; section 5901 applies generally to federal government organizations and employees. Before the FLRA, the Air Force agreed with the FLRA that uniform cleaning expenses fell within the scope of these statutes, and therefore the FLRA decision addressed only whether the statutes leave any discretion to the Air Force to bargain. The FLRA ultimately concluded, because the Union proposal did not require an annual expenditure in excess of the $400 maximum allowance and was not otherwise inconsistent with the uniform statutes, that the Air Force had discretion to bargain over the amount of uniform cleaning expenses. *See Nat'l Ass'n of Indep. Labor Local 7*, 64 F.L.R.A. at 1199–1200. The Air Force now relies on a recently discovered Conference Report in contending that the uniform statutes preclude expenditures for uniform cleaning services. We apply the two-step analysis of *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842–43 (1984).

The plain text of the two uniform statutes addresses payment for a uniform or payment "[i]n lieu of," 10 U.S.C. § 1593(a)(2), provision of a uniform. The most natural reading

---

section 5901 of title 5.

10 U.S.C. § 1593(a), (d). Section 5901 provides, in relevant part:

> (a) There is authorized to be appropriated annually . . . on a showing of necessity or desirability, such sums as may be necessary to carry out this subchapter. The head of the agency concerned, out of funds made available by the appropriation, shall –
> (1) furnish to each of these employees a uniform at a cost not to exceed $400 a year . . . ; or
> (2) pay to each of these employees an allowance for a uniform not to exceed $400 a year . . . .

5 U.S.C. § 5901(a).

of the text allows the expenditure of up to $400 per employee per year for uniforms, and suggests that Congress cares not whether the employer or employee is the ultimate purchaser. *See FCC v. AT&T, Inc.*, 131 S. Ct. 1177, 1182 (2011). Neither the word "provide," 10 U.S.C. 1593(a)(2), nor "furnish," 5 U.S.C. § 5901(a)(1), normally brings to mind cleaning services. That Congress did not contemplate uniform maintenance to fall within the ambit of the statutory authorization appears clear from the use of the phrase "[i]n lieu of," contrasting a uniform allowance and the provision of a uniform. 10 U.S.C. § 1593(a)(1) & (2). The legislative history and other traditional tools of statutory construction reinforce this conclusion. *See Chevron*, 467 U.S. at 843 n.9; *Shays v. FEC*, 414 F.3d 76, 105 (D.C. Cir. 2005). The original Federal Employees Uniform Allowance Act of 1954, the uncodified precursor to section 5901, stated that funds may be used either to furnish a uniform or to pay "an allowance for defraying the expenses of *acquisition* of such uniform." Pub. L. No. 83-763, § 402, 68 Stat. 1105, 1114 (emphasis added). Review of the legislative history further reveals that initial versions of the House and Senate bills provided for uniform maintenance. *See* S. REP. NO. 83-1992 (accompanying H.R. 2263 and reprinting comments on S. 2265 and S. 3507), *reprinted in* 1954 U.S.C.C.A.N. at 3826 (summarizing H.R. 2263, substantially the same as S. 2665 and S. 3681, as authorizing disbursement "for purchase and upkeep of uniforms"). The Conference Report upon which the Air Force relies states, however, that this provision was deleted: "The conference substitute adopts the language of the Senate amendment [to Title IV of H.R. 2263], except . . . for deletion of a provision therein for use of uniform allowances for upkeep of uniforms." CONF. REP. NO. 83-2665 (1954), *reprinted in* 1954 U.S.C.C.A.N. 3861, 3875.

Although the Conference Report does not explain why the provision on upkeep of uniforms was deleted,[4] the FLRA owes deference to the Department of Defense's reasonable interpretation of the second uniform statute, 10 U.S.C. § 1593, because the Department administers that statute, *see Gen. Servs. Admin.*, 86 F.3d at 1187, and would exceed its authority by ruling that, in the absence of a provision specifically addressing the maintenance of uniforms, the Air Force has discretion to negotiate with the Union on uniform cleaning services, *see Nat'l Fed'n of Fed. Emps., Local 1669*, 55 F.L.R.A. at 67. Here the Air Force's interpretation of 10 U.S.C. § 1593 (which is, of course, the same as the interpretation of the Department of Defense), assuming there is ambiguity from statutory silence, is a permissible one that this court "should not disturb" because "it appears from the statute [and] its legislative history that the

---

[4] Agency comments reprinted in Senate Report No. 83-1992 indicate that the cost of providing and maintaining uniforms, estimated to be $20 million, *id.*, *reprinted in* 1954 U.S.C.C.A.N. at 3818, was a concern. *See* Letter from John W. Macy, Jr., For and in Absence of Philip Young, Chairman, U.S. Civil Serv. Comm'n, to Senator Frank Carlson, Chairman, Comm. on Post Office & Civil Serv. (Feb. 19, 1954) (commenting that S. 2265 provides "allowance for the purchase and maintenance of uniforms," but noting that "the annual cost of this bill would be substantial" and, given "the President's policy of curtailing expenditures wherever possible, . . . not recommend[ing] such legislation at this time"); Letter from True D. Morse, Under Sec'y, Dep't of Agric., to Chairman Carlson (Mar. 2, 1954) (commenting that S. 2665 provides allowance for "acquisition and upkeep of prescribed uniforms," but noting costs and not recommending enactment at this time); Letter from Edmund F. Mansure, Adm'r, Gen. Servs. Admin., to Chairman Carlson (Mar. 5, 1954) (describing GSA's existing "authority to purchase, repair, and clean uniforms" and suggesting payment of a uniform allowance be made optional in S. 2665), *reprinted in* 1954 U.S.C.C.A.N. 3829, 3836, 3840, 3850.

accommodation is . . . one that Congress would have sanctioned." *Chevron*, 467 U.S. at 845 (citation and quotation marks omitted). There consequently is no need to address the FLRA's bald assertion that the "necessary expense" doctrine under decisions of the Comptroller General might allow for such expenditures. *See* Resp. Br. 18, 20. *See generally ACT II*, 370 F.3d at 1218–19, 1221–22; 1 Office of the Gen. Counsel, U.S. Gen. Accounting Office, Principles of Federal Appropriations Law 4-19 (3d ed. 2004).

The parties agree that "a collective bargaining proposal is contrary to law, and hence not subject to bargaining, if it requires expenditure of appropriated funds for a purpose not authorized by law." *Ass'n of Civilian Technicians, Puerto Rico Army Chapter v. FLRA*, 534 F.3d 772, 776 (D.C. Cir. 2008) ("*ACT III*"); *see also Ass'n of Civilian Technicians, Puerto Rico Army Chapter v. FLRA*, 269 F.3d 1112, 1116–18 (D.C. Cir. 2001) ("*ACT I*"). The FLRA also recognizes that 31 U.S.C. § 1301(a) limits the application of appropriations "only to the objects for which the appropriations were made except as otherwise provided by law." Accordingly, whether as a matter of the plain text of the two uniform statutes, or the Air Force's permissible interpretation of any statutory ambiguity to which the FLRA must defer, the Air Force correctly maintains that the Union's uniform cleaning proposal is non-negotiable because the statute the Department of Defense administers does not authorize such payment from appropriated funds, and we grant the petition for review.