# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 19, 2012          Decided June 1, 2012

No. 11-1281

UNITED STATES DEPARTMENT OF THE AIR FORCE, LUKE AIR
FORCE BASE, ARIZONA,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL
1547,
INTERVENOR

On Petition for Review of a Final Decision of the
Federal Labor Relations Authority

*Robert D. Kamenshine*, Attorney, U.S. Department of
Justice, argued the cause for petitioner. With him on the
briefs were *Tony West*, Assistant Attorney General, and
*Thomas M. Bondy*.

*David Shewchuk*, Deputy Solicitor, Federal Labor
Relations Authority, argued the cause for respondent. On the
brief was *Rosa M. Koppel*, Solicitor.

*David A. Borer* and *Judith Galat* were on the brief for intervenor American Federation of Government Employees, Local 1547, in support of respondent.

Before: SENTELLE, *Chief Judge*, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*:   In 2006, the United States Department of the Air Force announced it would conduct a reduction-in-force ("RIF") at Luke Air Force Base in Arizona. In response, the union representing employees at the Base— the American Federation of Government Employees, Local 1547 (the "Union")—made several proposals about how the RIF should be conducted and asked the Air Force to enter into negotiations.   The Air Force claimed it had no duty to negotiate over three of the Union's proposals, prompting the Union to appeal to the Federal Labor Relations Authority. The Authority determined the Air Force had an obligation to negotiate over two of the three disputed proposals. *See Am. Fed'n of Gov't Emp., Local 1547 v. U.S. Dep't of the Air Force, Luke Air Force Base*, 65 F.L.R.A. 911, 917 (2011) ("*Luke Air Force Base*").

The Air Force now petitions for review of the Authority's unfavorable rulings.

I

Federal employees have the right "to engage in collective bargaining with respect to conditions of employment," 5 U.S.C. § 7102(2), but that right only extends so far.  Federal agencies have no duty to negotiate over a proposal that is "inconsistent with any Federal law or any Government-wide

rule or regulation." *Id.* § 7117(a)(1). They also have no duty to negotiate over a proposal that interferes with their authority "to hire, assign, direct, layoff, [or] retain employees," *id.* § 7106(a)(2)(A), unless the proposal concerns "appropriate arrangements for employees adversely affected by the exercise" of that management authority, *id.* § 7106(b)(3).

The two proposals at issue here—Proposals 1 and 2—related to the RIF's effect on veterans recruitment appointments ("VRAs"). Rooted in the Federal policy "to promote the maximum of employment and job advancement opportunities within the Federal Government for qualified covered veterans," 38 U.S.C. § 4214(a)(1), VRAs are "excepted appointments, made without competition, to positions [at Federal agencies] otherwise in the competitive service." 5 C.F.R. § 307.103. These excepted appointments are not permanent; "[u]pon satisfactory completion of 2 years of substantially continuous service, [an] incumbent's VRA must be converted to a career or career conditional appointment." *Id.*

The Air Force's planned RIF only eliminated competitive service positions, which meant VRA appointees who had not been converted to competitive service employees would not have been affected. Although the Union represented both VRA appointees and competitive service employees, it did not want to insulate the VRA appointees from the RIF because, in many cases, the appointees had accrued less service time than competitive service employees in comparable positions. To address that issue, the Union offered Proposal 1: if the Air Force determined a competitive service employee would be displaced by the RIF, and a VRA appointee with less seniority occupied a similar position, the Air Force should convert that VRA appointee to a term appointee whose term expired before the RIF took effect.

*Luke Air Force Base*, 65 F.L.R.A. at 911. And to address its related concern that the Air Force would fill "vacant positions with excepted service VRA employees" before the RIF was completed, the Union offered Proposal 2:   the Air Force should only fill a new position with a VRA appointee if the position would not be affected by the ongoing RIF. *Id.* at 914.

The Air Force claimed it had no obligation to negotiate over either Proposal because each interfered with its management authority. *Id.* at 912, 914. It further claimed it had no obligation to negotiate over Proposal 1 because the Proposal conflicted with various federal regulations relating to RIFs and term employment. *Id.* at 912. The Authority disagreed on all counts. It found Proposal 1 did not contravene the RIF and term-employment regulations and did not infringe on the Air Force's authority to assign or layoff employees. *Id.* at 912–14. And though it was willing to "assum[e]" that Proposal 2 interfered with the Air Force's right to hire employees, the Authority found the Proposal negotiable under 5 U.S.C. § 7106(b)(3) because it concerned "appropriate arrangements for employees adversely affected" by the Air Force's exercise of its hiring authority. *Id.* at 914.

## II

In its petition, the Air Force contends, for the first time, that it had no duty to negotiate over Proposals 1 and 2 because they conflicted with federal statutes and regulations governing VRAs. It also argues the Authority erred when it determined that Proposals 1 and 2 did not improperly infringe on management authority. We find the first claim waived and the second insufficient to overcome our deferential standard of review. *See Nat'l Fed'n of Fed. Emps. v. FLRA*, 745 F.2d 705, 707–08 (D.C. Cir. 1984) (holding an Authority ruling

may only be set aside "if arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").

A

The Air Force identifies two alleged conflicts between the Proposals and the laws creating the VRA program. It claims Proposal 1 conflicted with 5 C.F.R. § 307.103 because it required the conversion of VRA appointees to career appointees before "completion of 2 years of substantially continuous service." And it claims Proposal 2 conflicted with 38 U.S.C. § 4214(a)(1) because its restriction on hiring VRA appointees did not "promote the maximum of employment and job advancement opportunities within the Federal Government for qualified covered veterans."

The Air Force concedes it did not present either of these objections to the Authority. Petitioner's Br. 13, 23. Accordingly, we may only consider them if the Air Force's failure to raise them before the Authority "is excused because of extraordinary circumstances." 5 U.S.C. § 7123(c).

Our precedents demonstrate that "extraordinary circumstances" truly are extraordinary. With certain inapplicable exceptions, we have only found they exist when the newly raised arguments implicate constitutional issues like "separation of powers," *U.S. Dep't of the Air Force v. FLRA*, 648 F.3d 841, 845 (D.C. Cir. 2011), or "sovereign immunity," *U.S. Dep't of the Army v. FLRA*, 56 F.3d 273, 275 (D.C. Cir. 1995). And we have consistently found they do *not* exist when, as here, the new argument is based on statutory inconsistency alone. *See U.S. Dep't of the Air Force*, 648 F.3d at 845; *U.S. Dep't of Air Force v. FLRA*, 949 F.2d 1169, 1174–75 (D.C. Cir. 1991).

The Air Force asserts that this is not a typical case of statutory inconsistency because its new objections protect the "employment rights under the VRA program of third-party veterans who were not participants in the proceedings before the [Authority]." Petitioner's Br. 24. It submits this Court has never held that a "waiver by a government agency deprives the Court of jurisdiction to consider . . . an abrogation of third-party statutory rights." Petitioner's Reply Br. 8.

That distinction is not dispositive here. The "extraordinary circumstances" requirement "was designed to ensure that the Authority's expertise be used to dispose of all arguments relating to cases within its jurisdiction," and an "agency's legal strategy or, arguably, deficient lawyering by agency counsel cannot provide a waiver from this clear congressional directive." *U.S. Dep't of Housing & Urban Dev. v. FLRA*, 964 F.2d 1, 5 (D.C. Cir. 1992). Moreover, strict enforcement of the waiver statute promotes "agency autonomy and judicial efficiency." *U.S. Dep't of the Air Force*, 648 F.3d at 846; *see also Marine Mammal Conservancy, Inc. v. Dep't of Agriculture*, 134 F.3d 409, 414 (D.C. Cir. 1998) (observing that the policies underlying similar waiver provisions include "giving agencies the opportunity to correct their own errors, . . . compiling a record adequate for judicial review, [and] promoting judicial efficiency"). It may be tempting to ignore these abstract principles out of concern for the rights of our veterans, but we cannot selectively enforce the waiver statute based on whose rights are at stake. Nor can we simply decline to enforce the waiver statute whenever third-party rights are implicated, for doing so would make "extraordinary circumstances" quite ordinary. We therefore find the Air Force's claims of conflict waived.

B

The Air Force's alternative argument is that the Authority acted arbitrarily when it found the Proposals did not interfere with management authority. That claim falls short because "we can discern a reasoned path from the facts and considerations before the [agency] to the decision it reached." *Neighborhood TV Co., Inc. v. FCC*, 742 F.2d 629, 639 (D.C. Cir. 1984).

The Air Force objects to the Authority's determination that Proposal 1 did not interfere with its right to "layoff" employees. The Authority has explained that "management's right to layoff employees includes the right to conduct a RIF and to exercise its discretion in determining which *positions* will be abolished and retained in a RIF." *Nat'l Treasury Emps. Union v. U.S. Dep't of Treasury*, 60 FLRA 219, 222 (Sept. 3, 2004) (emphasis added). Here, the Authority reasonably found that Proposal 1 did not restrict the Air Force's right to conduct a RIF, nor limit the Air Force's discretion in deciding which positions to cut, because the Proposal only took effect after the Air Force had decided which positions it wished to eliminate. *See Luke Air Force Base*, 65 F.L.R.A. at 913–14.

In the Air Force's telling, Proposal 1 was no different than an earlier Union proposal the Authority found non-negotiable. *See Am. Fed'n of Gov't Emps., Local 1547 v. Luke Air Force Base*, 64 F.L.R.A. 813 (May 27, 2010). That is not so. The Union's earlier proposal barred the Air Force from conducting a RIF until all VRA appointees had accrued two years of service and had been converted to competitive service employees. *See id.* at 816. That proposal plainly interfered with the Air Force's right "to conduct a RIF" by dictating when the Air Force could begin implementing its

RIF plan. *Nat'l Treasury Emps. Union v. United States Dep't of Treasury*, 60 FLRA at 222. Proposal 1 had no such effect.[1]

With regard to Proposal 2, the Authority determined that even if the Proposal interfered with the Air Force's right to hire employees, the Air Force nonetheless had a duty to negotiate because the Proposal concerned "appropriate arrangements for employees adversely affected" by the Air Force's exercise of that right. 5 U.S.C. § 7106(b)(3). The Authority arrived at that conclusion by applying a two-part test, under which a proposal concerns "appropriate arrangements" if it was "intended as an arrangement," and was "appropriate because it d[id] not *excessively* interfere with the exercise of management's rights." *Luke Air Force Base*, 65 F.L.R.A. at 915 (emphasis added). The Authority found Proposal 2 satisfied the "arrangement" requirement because the RIF would have had "a severe, negative impact" on terminated employees, and the Proposal was sufficiently tailored "because it benefit[ted] employees who could be affected by the RIF." *Id.* And the Authority found the Proposal satisfied the "appropriateness" requirement because the benefits to employees outweighed the burden on the Air Force's hiring authority. *See id.*

The Air Force only challenges the Authority's appropriateness finding. It argues that when the Authority weighed the benefits to employees against the burden on management, it failed to account for "the vital and independent statutory interest in preserving hiring . . . [of]

---

[1] The Air Force also argues Proposal 1 was non-negotiable because the Proposal interfered with its right to "retain . . . employees," but the Air Force waived that argument by failing to present it to the Authority. *See Luke Air Force Base*, 65 F.L.R.A. at 912 (listing Air Force's objections to Proposal 1).

veterans." Petitioner's Br. 31. While it is true the Authority did not explicitly discuss the interests of veterans in its appropriateness analysis, its decision explained why the RIF's impact on veterans might not be that severe. The Authority observed that the Proposal's "hiring limitation only applie[d] to RIF-affected positions"; that the Air Force could still "fill vacancies during the RIF from other sources," including veterans not on VRAs; and that the "hiring restriction [wa]s only effective until the termination of the RIF," meaning the Air Force could always cut the RIF short if it felt that the effect on veterans was too dramatic. *Luke Air Force Base*, 65 F.L.R.A. at 915. Taken together, these justifications for the appropriateness finding adequately addressed the Air Force's concerns about veterans—concerns, it is worth noting, that the Air Force never raised explicitly in its submissions to the Authority.

## III

Because the Air Force's objections to the Authority's ruling are either waived or unavailing, the petition for review is

*Denied.*